

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-11-0027-CR

_____

RICHARD NIETO TREVINO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 426th District Court
Bell County, Texas
Trial Court No. 65376, Honorable Fancy H. Jezek, Presiding

March 18, 2013

OPINION

Before Campbell and Hancock and Pirtle, JJ.

Appellant, Richard N. Trevino, was convicted of the offense of indecency with a child by contact[1] and sentenced to twenty years' imprisonment. This Court affirmed his conviction. Trevino v. State, No. 07-11-00027-CR, 2011 Tex. App. LEXIS 5777 (Tex.App.—Amarillo July 27, 2011) (mem. op., not designated for pulication). The Texas Court of Criminal Appeals granted appellant's petition for discretionary review. In

---

[1] See TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011).

re Trevino, PD-1304-11, 2011 Tex. Crim. App. LEXIS 1676 (Tex.Crim.App. Dec. 14, 2011). Subsequently, the Texas Court of Criminal Appeals decided Kirsch v. State, which addressed the controlling issue presented by appellant's appeal. Kirsch v. State, 357 S.W.3d 645 (Tex.Crim.App. 2012). Thereafter, the Texas Court of Criminal Appeals vacated this Court's decision and remanded the case for reconsideration in light of Kirsch. Trevino v. State, PD-1304-11, 2012 Tex. Crim. App. Unpub. LEXIS 427 (Tex.Crim.App. May 2, 2012) (not designated for publication). After the case was remanded, the parties were requested to provide additional briefing in light of the Kirsch opinion.

Appellant contends that, under Kirsch, the trial court's definition of female genitalia was error and that the error was harmful. Specifically, appellant contends that the definition provided to the jury was an improper comment on the weight of the evidence. The State avers that the definition given by the trial court was not error and further, if it was error, such error was not harmful. We will affirm.

Factual and Procedural Background

The facts of the case are more fully discussed in this Court's original opinion and we refer the parties to that opinion. See Trevino, 2011 Tex. App. LEXIS 5777, at *1-3. Of particular importance to our consideration is the testimony of the victim, V.H., and the testimony of the sexual assault nurse examiner (SANE), Heather Taylor.

Regarding the instant offense, V.H. testified that, after appellant stopped the bus, he came and set in the seat next to or across from her. She continued:

Q. Okay. And then what happened.

2

A. We were talking, and started kissing.  And we- - we took off my pants.  And he started kissing my genital area.

Q. Did he touch you?

A. Yes.

Q. Where did he put his hands on your body?

A. On my breasts and my back, and the genital area.

Q. Did he touch you on the breasts and in the genital area on top of the clothes or under the clothes?

A. The breasts was on top.  The genital was under, cause my pants were off.

Q. All right.  And I apologize for asking, but when he put his hand on your genital area down there, what part - - where was his hand?

A. The top.  It wasn't like going inside or anything.

Q. Okay.  Was that an area where you had already begun to grow hair?

A. Yes.

Q. And did his hand actually make contact with your hair, with your genital area?

A. Yes.

Following V.H.'s testimony, the State presented the testimony of Heather Taylor, the sexual assault nurse examiner.  During her testimony, Taylor described the female genital area in some detail.  While using State's Exhibit 25, a diagram of the female genital area, Taylor gave the following testimony:

3

Q. It's easier if you take a pen and point to the object on the screen -- on the projector.

A. Okay. The external structures, the first thing have, this is called the - - the fatty outer lips of the - - of the genitalia is called the labia majora. Okay. That is where pubic hair grows. Okay. Also, part of the external genitalia is called the mons pubic – pubis. It is the area up here. It is a fatty layer of tissue over the pubic bone that also has pubic hair growth on it as well.

. . .

And I apologize. I did forget to mention the fatty outer lips which is the labia majora, then you have the inner lip which is the labia minora, it's the thin inner lip, as well.

The State then asked some specific questions regarding the female genitalia.

Q. If we're looking at genitalia, and assuming we have the female whose reached puberty and has pubic hair - -

A. Yes, ma'am.

Q. - - are the external genitalia in a female covered with pubic hair?

A. Yes, ma'am.

Q. And that's actually part of the - - of the genitalia even though it's not inside the vagina; is that fair?

A. Yes, ma'am.

At the conclusion of the evidence the trial court prepared the court's charge to the jury. Contained in the charge is the definition at issue in this case. The trial court defined "genitalia" as follows:

> The genitals or genitalia of a female consist of an internal group and an external group. The internal group is situated within the pelvis and consists of the ovaries, uterine tubes, uterus and pubis (the rounded mound in front of the joinder of the pubic bones that becomes covered with hair at the time of puberty), the labia majora and minora (longitudinal folds of skin at the opening of the female orifice) and certain glands situated within the vestibule of the vagina.

Appellant objected to the proposed definition on the basis that it was a comment on the weight of the evidence. Appellant maintained that the definition "paraphrases and consists of the same testimony that was given by the SANE nurse, Nurse Taylor, who testified and made the very same description." The trial court overruled the appellant's objection.

The jury found appellant guilty of indecency with a child by contact and set his punishment at imprisonment for twenty years. Appellant perfected his appeal and the issue is now before us for a second time. On remand from the Texas Court of Criminal Appeals, we now address appellant's contention that the definition given by the trial court was a comment on the evidence in light of the opinion of the Texas Court of Criminal Appeals in Kirsch.

Standard of Review

Appellate review of alleged jury charge error is a two-step process. Kirsch, 357 S.W.3d at 649 (citing Abdnor v. State, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994) (en banc)). Initially, the reviewing court must determine if the charge was erroneous. Id.

5

(citing Middleton v. State, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003) (en banc)). If we find that error occurred, we must then analyze the error for harm. Id. In analyzing the harm issue where appellant has objected to the charge at issue, as in this case, reversal is required if the error is "calculated to injure the rights of [appellant]. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (en banc) (op. on reh'g). Stated differently, an error that has been properly preserved is reversible unless it is harmless. Id.

Applicable Law

A person commits the offense of indecency with a child by contact if, with a child younger than 17 years of age and not the person's spouse, the person engages in sexual contact with the child or causes the child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means "any touching by a person" of "any part of the genitals of a child" or "any touching of any part of the body of a child" with "any part of the genitals of a person," "if committed with the intent to arouse or gratify the sexual desire of any person." Id. § 21.11(c). The Texas Penal Code does not define the term "genitals."

The trial court's charge to the jury must satisfy the following definition:

a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court's charge must contain an accurate description of the law. Ex parte Varelas, 45 S.W.3d 627, 633 (Tex.Crim.App. 2001) (en banc). But the trial court must not convey any personal

6

opinion in the jury charge as to the truth or falsity of any evidence. Russell v. State, 749 S.W.2d 77, 78 (Tex.Crim.App. 1988) (en banc). A charge that "assumes the truth of a controverted issue" is an improper comment on the weight of the evidence. Whaley v. State, 717 S.W.2d 26, 32 (Tex.Crim.App. 1986); Delapaz v. State, 228 S.W.3d 183, 212 (Tex.App.—Dallas 2007, pet. ref'd). Further, because "[j]uries are free to 'consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses,'" "'special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge.'" Kirsch, 357 S.W.3d at 652 (quoting Walters v. State, 247 S.W.3d 204, 211 (Tex.Crim.App. 2007)).

The Texas Government Code provides that undefined terms shall be "construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011 (West 2005). Jurors may "freely read [undefined] statutory language to have any meaning which is acceptable in common parlance." Kirsch, 357 S.W.3d at 650. However, if such undefined terms have acquired a peculiar and appropriate meaning in the law, they are considered as having been used in their technical sense. Id.

Analysis

The essence of the parties' positions regarding whether error exists in the giving of the definition of "genitalia" concerns the question of whether "genitalia" has acquired a peculiar and appropriate meaning in the law, such that it is considered as having been used in its technical sense. Id. Appellant contends that it has not and, therefore, the giving of a definition violated the rules found in the Texas Code of Criminal Procedure concerning jury charges. The State counters that, as demonstrated in Breckenridge v.

7

State, "genitalia" has acquired an established legal and common law meaning. Breckenridge v. State, 40 S.W.3d 118, 123 (Tex.App.—San Antonio 2000, pet. ref'd). We cannot agree with the State's reliance on Breckenridge.

Breckenridge is an opinion that predates the Texas Court of Criminal Appeals's decision in Kirsch. Moreover, the cases relied on in Breckenridge do not support the holding. Of the five cases cited in the opinion, four are cases that were deciding issues of sufficiency of the evidence. See Clark v. State, 558 S.W.2d 887, 889 (Tex.Crim.App. 1977); Carmell v. State, 963 S.W.2d 833, 837 (Tex.App.—Fort Worth 1998, pet. ref'd); Bryant v. State, 685 S.W.2d 472, 474 (Tex.App.—Fort Worth 1985, pet. ref'd); and Lujan v. State, 626 S.W.2d 854, 858–59 (Tex.App.—San Antonio 1981, pet. ref'd). As the Kirsch opinion noted, "an appellate court may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence on appellate review, [but] a trial court's inclusion of that definition in a jury charge may constitute an improper comment on the weight of the evidence." Kirsch, 357 S.W.3d at 651. The Aylor case, also cited in the Breckenridge opinion, discusses the relationship between "genitals" and "vagina" for the purposes of analysis pursuant to the allegation of violation of the *ex post facto* challenge to a conviction. Aylor v. State 727 S.W.2d 727, 729 (Tex.App.—Austin 1987, pet. ref'd). None of these cases involved the use of a definitional instruction for "genitalia" in a court's jury charge.

This leaves Breckenridge relying singularly on the posit that the exception to the general rule announced in Medford v. State—that undefined terms are to be understood as ordinary usage allows, and jurors may give them any meaning which is acceptable in common parlance—should apply. See Medford v. State, 13 S.W.3d 769, 771–72

8

(Tex.Crim.App. 2000). The problem with this analysis is that the term under consideration in Medford was "arrest," and the court in Medford held that "'arrest' is a technical term possessing a long, established history in the common law, and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest." Medford, 13 S.W.3d at 772. The State has not provided, nor are we aware of, any authority claiming that "genitalia" has, prior to this case, acquired such a common law definition. Accordingly, we do not find Breckenridge to control the issue of whether the trial court committed error in giving the definition of "genitalia" to the jury.

Our analysis turns on the relationship between the definition given and the testimony of the State's witnesses. Principally, it is the testimony of V.H. and the SANE nurse that results in our conclusion that the definition was a comment on the evidence. V.H. testified using the term "genital" without a lot of explanation, other than the area where she had begun to grow pubic hair. Following this was the testimony of the SANE nurse, Taylor, who gave a rather long and detailed explanation of what she meant when she used the terms "genital" and "genitalia," which explanation included reference to the mons pubis and the fact that the exterior of this area would have pubic hair growing on it if the female had reached puberty.

Then there followed the definition which almost tracked the testimony of the SANE nurse exactly. More problematic is that this definition focused the jury's attention on the area of the pubic bone with the phrase that such exterior of that area would have pubic hair growing on it if the female had reached puberty. By doing so, the trial court, in effect, directed the attention of the jury to a particular portion of the testimony and granted that testimony its seal of approval by tracking the same. The fact that such

9

definition might be considered accurate does not save it from its flaw: it directs the jury to focus on a particular piece of evidence to support a finding of an element of the charged offense.  See Kirsch, 357 S.W.3d at 652.  This, in turn, violates article 36.13 of the Texas Code of Criminal Procedure because the question of whether appellant violated section 21.11(a)(1) by having contact with V.H.'s genitals is a jury question.  See TEX. CODE CRIM. PROC ANN. art. 36.13 (West 2007).  Thus, the instruction does, in fact, constitute a comment on the evidence and, as such, invades the jury's province.  See Kirsch, 357 S.W.3d at 652.  The giving of the definition was error by the trial court.

## Harm Analysis

The final inquiry we must make is the issue of harm.  Remembering that appellant did object to the giving of the definition, our inquiry is whether the error was "calculated to injure the rights of [appellant]."  Almanza, 686 S.W.2d at 171.  Stated differently, an error that has been properly preserved is reversible unless it is harmless.  Id.  In assessing harm under the Almanza standard for preserved error, a reviewing court is directed to review the evidence supporting guilt, the argument of counsel, the charge as a whole, and, in short, the entire record.  See id. at 174 (citing Davis v. State, 28 Tex. Ct. App. 542, 13 S.W. 994, 995 (1890)).

Our review of the record reveals that the issue of whether appellant touched the area of the genitalia was not a contested issue.  Instead, appellant argued that no touching occurred with the intent to arouse or gratify his sexual desire.  This is reflected in the nature and tenor of trial counsel's cross-examination of V.H.  Trial counsel examined V.H. closely about whether she saw appellant's sexual organ during the

incident alleged in the indecency indictment. Further, trial counsel examined V.H. regarding, if she did in fact see appellant's sexual organ, whether the same was erect. Finally, in final arguments, trial counsel argued the sexual contact either did not occur, based upon credibility of V.H.'s testimony, or, if it did occur, there was no proof that the contact occurred to arouse or gratify appellant's sexual desire. A review of the final arguments offered by the State, reflects that the State did not emphasize the definition in question. Finally, the definition itself was more in the nature of a "mild, neutral, and an obvious common-sense proposition." Brown v. State, 122 S.W.3d 794, 802 (Tex.Crim.App. 2003) (dealing with a definition of normal use); Baggett v. State, 367 S.W.3d 525, 529 (Tex.App.—Texarkana 2012, pet. ref'd). In the final analysis, the trial court's error was not calculated to injure the rights of appellant. See Almanza, 686 S.W.2d at 171. As such, the error was harmless.

## Conclusion

Having found that the trial court's error was harmless, we overrule his issue and affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

11