

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00830-CR

Joseph Lester **GREEN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 11-06-10686-CR
Honorable Camile G. DuBose, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice
Concurring Opinion by:  Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  May 28, 2014

REVERSED AND REMANDED

Joseph Green appeals his conviction for aggravated sexual assault of a child.  Because we conclude the jury charge contained harmful error, we reverse the trial court's judgment and remand for a new trial.

### BACKGROUND

When A.G. was twelve years old, she began communicating with her father, Green, who was incarcerated and who she did not previously know.  Green and A.G. exchanged letters for a period of time until Green was released from prison.  Upon his release, Green began visiting A.G.

at her grandparents' home where she lived. Green's visits evolved into taking A.G. out to eat or to the mall, and eventually included A.G. spending the night with Green at his mother's home where he resided. At first, Green slept on the couch while A.G. slept in his bed, but then Green began sleeping in the bed with A.G. On one of her overnight visits, A.G. awoke to find Green's hand underneath her clothes, touching her genitals and breast. After Green stopped, A.G. started crying, got up, turned on the lights, and demanded he take her home. When Green asked her what was wrong, A.G. told him it was "because he touched her." Green eventually agreed to drive A.G. home to her grandparents' house.

When A.G. arrived home, she called her Aunt Sandy and told her that her father had touched her. Her grandparents called the police the next day. Bexar County Sheriff's Deputy Adam Hernandez interviewed A.G. at the home and recommended she go to the hospital for a sexual assault exam. SANE Nurse Cynthia Garcia examined A.G.; there was no evidence of any physical trauma. A few days later, A.G. was interviewed by an investigator with the Texas Department of Family and Protective Services. Finally, Mary Barrios of Bluebonnet Advocacy, Inc. conducted a videotaped interview with A.G. Green was initially indicted for indecency with a child by sexual contact. The State later dismissed that indictment and re-indicted Green for aggravated sexual assault of a child, alleging that Green penetrated A.G.'s female sexual organ with his finger. A jury found Green guilty of aggravated sexual assault as charged in the indictment, and he was sentenced to twenty-four years' imprisonment. Green now appeals.

## ANALYSIS

On appeal, Green asserts the jury charge contained error, the evidence is insufficient to support his conviction, and the court erroneously excluded a videotaped interview of A.G. We address the jury charge issue first.

*Jury Charge*

Green argues the jury charge was erroneous because (i) it contained non-statutory definitions of the terms "penetration" and "female sexual organ" which amounted to an improper comment on the weight of the evidence, and (ii) it asked the jury to consider whether Green was guilty of the lesser-included offense of indecency with a child by sexual contact if it found him not guilty of aggravated sexual assault. When reviewing alleged charge error, we first determine whether error exists in the jury charge, and if so whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).

*Definitions*. Upon the State's request, and over Green's objection, the court's charge included instructions defining the terms "penetration" and "female sexual organ." The charge defined "female sexual organ" as "the entire female genitalia, including both vagina and the vulva. Vulva is defined as the external parts of the female genital organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance to the vagina." The court also defined "penetration" and instructed the jury as follows:

> One of the elements in this case is 'penetration.' You are instructed that penetration occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips and is complete, however slight, if any. Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute.

Green does not argue the definitions are incorrect, but rather argues that no definitions of "penetration" and "female sexual organ" should have been given because when a term is undefined in the Penal Code the jury is to construe its meaning according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011 (West 2013); TEX. PENAL CODE ANN. § 1.05(b) (West 2011) (incorporating Government Code section 311.011). Green relies on *Kirsch v. State*, in which the Court of Criminal Appeals held a jury instruction defining the common word

"operate" was an improper comment on the weight of the evidence in a driving while intoxicated prosecution. *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012). In *Kirsch*, the Court noted that while the definition given to the jury was neutral and legally accurate, because the term "operate" is a common word that has not acquired a technical meaning it was to be interpreted by the jury according to its common usage and instructing the jury to apply a particular definition was improper. *Id.* at 650-52; TEX. GOV'T CODE ANN. § 311.011 (stating general rule that statutorily undefined term is to be construed according to its common usage, but that words and phrases that have "acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly"). The Court explained that while a particular definition of a statutorily undefined term may be used by an appellate court in conducting a sufficiency review, submitting the definition as an instruction to the jury may constitute an improper comment on the weight of the evidence. *Kirsch*, 357 S.W.3d at 651. Under article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case" and "not expressing an opinion as to the weight of the evidence." *Id.*; TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Generally, if a jury charge instruction "is not derived from the [penal] code, it is not 'applicable law' under art. 36.14." *Kirsch*, 357 S.W.3d at 651 (quoting *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)). The Court explained that, "[w]ith only limited exceptions, the trial court may not include an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense," even if the instruction is "facially neutral and legally accurate." *Kirsch*, 357 S.W.3d at 651; *cf. Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000) (holding that "'[a]rrest' is a technical term possessing a long, established history in the common law, and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest"). Concluding that the jury was free to assign "any meaning which is acceptable in common parlance" to the statutorily undefined word

"operate" in the DWI statute, the Court held that inclusion of a particular definition in the jury charge "impermissibly guided their understanding of the term" and "improperly focus[ed] the jury on the type of evidence that would support a finding that appellant was operating his motorcycle." *Kirsch*, 357 S.W.3d at 652 (stressing that whether appellant was operating his motorcycle was a question of fact to be resolved by the jury).

We conclude the charge's definitions of "female sexual organ" and "penetration" similarly constituted an improper comment on the weight of the evidence because they focused the jury's attention on the specific type of evidence that would support a finding of the contested element of penetration. *See id.*; TEX. CODE CRIM. PROC. ANN. art. 36.14. In a case that pre-dates *Kirsch*, we previously rejected a similar "comment on the weight of the evidence" challenge to a charge's definition of female "genitals" or "genitalia" in an indecency with a child by exposure prosecution. *See Breckenridge v. State*, 40 S.W.3d 118, 122-23 (Tex. App.—San Antonio 2000, pet. ref'd). We held the trial court did not abuse its discretion by defining the term in the jury charge because the victims' testimony drew a distinction between the vagina and pubic hair or pubic area that could have confused the jurors and it was necessary they understand the legal meaning of genitals. *Id.* at 123-24 (also noting the terms "genitals" and "genitalia" have acquired an established legal or common law meaning which includes more than just the vagina). However, *Breckenridge* is a pre-*Kirsch* opinion and relied heavily on cases addressing sufficiency of the evidence rather than definitional instructions in the jury charge. *See id.* We therefore conclude that *Breckenridge* is distinguishable from this case. *See Trevino v. State*, No. 07-11-0027-CR, 2013 WL 1110683, at *4-5 (Tex. App.—Amarillo Mar. 18, 2013, no pet.) (on remand from Court of Criminal Appeals for reconsideration in light of *Kirsch*, distinguishing *Breckenridge* and holding jury instruction defining female "genitalia" was comment on the evidence but error was harmless); *see also*

*Steadman v. State*, 280 S.W.3d 242, 247-48 (Tex. Crim. App. 2009) (assessing sufficiency of the evidence and discussing the broad scope of the definition of "penetration" in sexual assault cases).

Having concluded that submission of the definitions was error, we must determine whether the error was harmful. Because Green properly objected to the definitions, we determine whether "the error appearing from the record was calculated to injure" his rights, i.e., whether there was "some harm." *Ngo*, 175 S.W.3d at 743; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). In assessing harm, we consider the jury charge as a whole, the arguments of counsel, all of the evidence "including the contested issues and weight of the probative evidence," and any other relevant factors in the record. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). In this case, as discussed below, there was conflicting testimony on the critical, and hotly contested, question of whether Green touched A.G.'s female sexual organ only on the "outside" or whether he touched her "beneath the fold of the external genitalia" amounting to penetration of the female sexual organ. This issue of whether penetration occurred — a question of fact for the jury to resolve — was the focus of counsel's questioning of the witnesses and closing arguments. Viewed in the context of the entire jury charge, the definitional instructions were error because they impinged on the jury's fact-finding authority by focusing the jury's attention on the evidence that would support a finding of penetration of the female sexual organ. *See Kirsch*, 357 S.W.3d at 652. On this record, we cannot say with "fair assurance" that the charge error did not have an "injurious effect or influence in determining the jury's verdict." *Trevino v. State*, 100 S.W.3d 232, 243 (Tex. Crim. App. 2003). We therefore conclude that inclusion of the definitions of "penetration" and "female sexual organ" in the jury charge resulted in some harm to Green and requires reversal.

Because we sustain Green's first jury charge issue, we need not address his assertion that the charge was also erroneous because it contained a lesser-included offense instruction and his

complaint concerning exclusion of the video statement. *See* TEX. R. APP. P. 47.1. We must, however, address Green's challenge to the legal sufficiency of the evidence to support his conviction because, if successful, it would result in greater relief through rendition of a judgment of acquittal. *See Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010) (noting that appellant who establishes trial error is still entitled to appellate consideration of his claim that the evidence is insufficient to support his conviction).

### *Legal Sufficiency*

Green was charged with committing aggravated sexual assault by "intentionally or knowingly caus[ing] the penetration of the sexual organ of "A.G.," a child who was then and there younger than 14 years of age, by [his] finger." *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2013). Green asserts the evidence is legally[1] insufficient to prove his finger penetrated the child's female sexual organ as required to convict him of aggravated sexual assault.

In reviewing the sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The essential elements of the crime are the elements of the offense as defined by the hypothetically correct jury charge for the case, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."

---

[1] In his brief, Green also asserts the evidence is factually insufficient to support his conviction. However, appellate courts no longer conduct a factual sufficiency review in criminal cases. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding the *Jackson v. Virginia* legal sufficiency standard is the only standard to be used in analyzing whether the evidence is sufficient to prove each element of a criminal offense). Therefore, our analysis focuses solely on whether the evidence is legally sufficient to support Green's conviction.

*Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "as authorized by the indictment" consists of the statutory elements of the offense as modified by the charging instrument. *Id.*; *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). "Viewing the evidence in the light most favorable to the verdict" requires us to defer to the jury's credibility and weight assessments because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012); *Lopez v. State*, 415 S.W.3d 495, 496-97 (Tex. App.—San Antonio 2013, no pet.).

In applying our standard of review, we "may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence . . . ." *Kirsch*, 357 S.W.3d at 651. It is well-established that within the context of sexual assault "penetration" of the female sexual organ occurs when there is "tactile contact beneath the fold of complainant's external genitalia." *Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012); *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (noting that the statute does not criminalize penetration of the vagina, but the broader conduct of penetration of the "sexual organ" of the child). The act of "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact" and constitutes penetration for purposes of a sexual assault. *Cornet*, 359 S.W.3d at 226 (citing *Vernon*, 841 S.W.2d at 409). Contact that is more intrusive than contact with the outer vaginal lips amounts to penetration of the female sexual organ. *Id.*

In asserting there is no evidence that his finger penetrated A.G.'s sexual organ, Green cites to statements A.G. made during the investigation in which she denied that there was penetration,

denying that her dad's finger "went inside" or "penetrated" her. For example, the SANE nurse testified that A.G. pointed to her genitals and told her Green was "trying to put his finger right there," explaining further that, "he was touching it on the outside and was trying to stick his finger inside." When the nurse asked, "So did his finger go inside past the lip part," A.G. answered, "No." When later asked whether there was "penetration," A.G. told her there was not. Deputy Hernandez testified that A.G. did not initially allege any penetration. He stated that he explained "penetration" to her and used his hand and finger to demonstrate where the "wall of [her] private area" was located and what amounted to penetration. Hernandez testified that A.G. told him Green "just went around the vagina."

At trial, however, A.G. testified that Green's finger went in between the outer lips of her vagina which is sufficient to constitute penetration. *Cornet*, 359 S.W.3d at 226; *Vernon*, 841 S.W.2d at 409. Specifically, A.G. testified that on the night of the incident she awoke to find Green's hand inside the boxer shorts she was wearing and felt him rubbing "the lips to [her] vagina." When the prosecutor asked, "Did he ever go in between them," A.G. answered, "Yes." When questioned about her prior statements that there was no penetration, A.G. explained that to her "penetration" means "to insert something," and so when the interviewers asked if there was any penetration she answered in the negative because "nothing went in me. It was just on the outside touching." When the prosecutor referenced her demonstration in front of the jury showing "that it was between the labia between your lips," and asked whether anyone had explained to her that constituted penetration, A.G. replied, "No," stating she thought "it had to be further." A.G. also testified that none of the interviewers explained to her that penetration could be passing in between the outer vaginal lips.

The uncorroborated testimony of a child victim is alone sufficient to support a conviction of aggravated sexual assault of the child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp.

2013); *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd). Moreover, "[c]hild victims of sexual crimes are afforded great latitude when testifying and they are not expected to testify with the same clarity and ability as is expected of a mature and capable adult." *Hiatt*, 319 S.W.3d at 121 (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990)). The jury heard A.G. testify that Green was rubbing the outer lips of her vagina and trying to stick his finger inside her vagina and that, while he was ultimately unsuccessful, his finger did pass "in between" the outer lips of her vagina. This testimony constitutes sufficient evidence of penetration under a hypothetically correct jury charge. *Id.* Further, A.G. explained her prior statements denying penetration by stating she understood the term to mean insertion of something inside her. She further testified that the interviewers did not explain to her that penetration could be passing in between the outer lips of the vagina. Indeed, the SANE nurse conceded that she did not ask A.G. "if anything went in between the lips" of her vagina, stating, "I just asked her if it went inside; past." Hernandez stated he provided A.G. a demonstration of what would constitute penetration. Ultimately, it was the jury's role to evaluate A.G.'s credibility and to resolve any conflicts between her testimony, her prior statements, and the testimony of others, and we defer to the jury's assessment. *Winfrey*, 393 S.W.3d at 768; *Merritt*, 368 S.W.3d at 525-26. We conclude the evidence is sufficient to support the jury's finding that Green is guilty of aggravated sexual assault of a child. Green's sufficiency issue is overruled.

CONCLUSION

Based on the foregoing reasons, we conclude that the submission of the definitional instructions on "female sexual organ" and "penetration" in the jury charge was harmful error, and we reverse the trial court's judgment and remand for a new trial.

Rebeca C. Martinez, Justice

PUBLISH