

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-13-00297-CR

_____

CHRISTOPHER EARL DARCY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Moore County, Texas
Trial Court No. 4750; Honorable Ron Enns, Presiding

June 25, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

"[W]hat use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel . . . ?"

*Spano v. New York*, 360 U.S. 315, 326, 79 S. Ct. 1202, 3 L. Ed. 2d 1265 (1959) (William O. Douglas, concurring)

In this appeal, we are confronted with, among other issues, whether an accused's Sixth Amendment right to counsel was violated when an agent of the District Attorney's office covertly contacted Appellant, Christopher Earl Darcy, after judicial

proceedings had been initiated and while Appellant was represented by counsel. Finding his right to counsel was violated, we reverse and remand.

BACKGROUND

Richard and Brenda Kiewiet were in the process of remodeling a house.[1]  Just prior to leaving town for four or five days, Brenda drove by the house and noticed a vehicle parked in the carport.  Realizing there was a woman in the car, she approached the vehicle.  The woman in the vehicle identified herself as Rebecca Morris and inquired whether the house was for sale or rent.  Brenda obtained Rebecca's phone number and, after explaining that she would be out of town for a few days, told her she would contact her at a later date.

When Richard and Brenda returned from being out of town, Richard went to the house to continue his remodeling project.  When he could not locate his drill, he realized his tool box and tools were missing.  He observed a broken storm window at the back of the house and wheel tracks from his missing tool box leading to the back gate.

Nine or ten days later, Brenda was driving around when she observed Rebecca's vehicle parked at a house on a different street.  Also parked at the house was a green pickup with a tool box in the back.  Because the tool box resembled Richard's missing tool box, she reported her observation to Richard, who then called the police.

Sergeant Kerry Hayes of the Dumas Police Department was dispatched to the scene on a stolen property call.  When he arrived, Sergeant Hayes observed Appellant

---

[1] Although the house was not their personal residence, it was a structure "adapted for overnight accommodation of persons," and was, therefore, a "habitation" for purposes of the offense at issue.  *See* TEX. PENAL CODE ANN. § 30.01 (1) (West 2011).

2

exit the house while carrying a large Rubbermaid bin containing items he was moving into the green pickup. Sergeant Hayes advised Appellant he was there on a call concerning the possibility of stolen property having been seen in the pickup. Appellant informed the officer that the pickup belonged to his nephew, Wesley, and he had merely borrowed it to move. Appellant consented to a search of the pickup and then asked if he could return to the house to continue moving items. Appellant then confronted Rebecca in her garage and accused her of calling the police. When she denied having done so, he left and did not return to the pickup. When Sergeant Hayes realized that Appellant was not returning, he asked about his whereabouts and was told Appellant had left through the back of the house.

Because Sergeant Hayes did not have any backup to pursue Appellant, he proceeded to search the pickup. There he found a tool box, tools, a red Marlboro duffle type bag containing Appellant's name and various other items of personal property, including a bong.[2] Richard later identified the tool box and some of the tools as his. Appellant was eventually arrested and charged with burglary of a habitation.[3] A jury trial commenced on June 17, 2013, and Appellant entered a plea of not guilty.

During trial, Rebecca testified she knew Appellant through his brother, Pat, who was a former classmate of hers. Rebecca explained that Pat, Pat's son Wesley, and Appellant would occasionally stay at her home. She testified she was looking at houses for her guests to move into because her home could not accommodate both her family and Appellant's family. She also testified she told Appellant about the Kiewiets' house

---

[2] Photos were taken at the scene, but no fingerprints were taken.

[3] *See* TEX. PENAL CODE ANN. § 30.02 (a)(3) (West 2011). As charged, an offense under this section is a second degree felony. *See id.* at § 30.02 (c)(2).

being available. According to Rebecca's testimony, Appellant explained to her he had been by the house and that the owners were "stupid" for leaving the house open.

The jury convicted Appellant of burglary of a habitation and sentenced him to twelve years confinement and a fine of $10,000. After sentence was pronounced, the trial court entered an order requiring Appellant to pay restitution of $2,237.94. Appellant advances five points of error challenging his conviction and the resultant order of restitution. By his first three issues, he questions the sufficiency of the evidence to support his conviction. By his fourth issue, he maintains his due process right to a fair trial was violated by the State creating "evidence" intended to "open the door" to the introduction of extraneous offenses. His fifth and final issue alleges a violation of his Sixth Amendment right to counsel as a result of the District Attorney's office contacting him while awaiting trial, without the benefit of having his counsel present.

ISSUES FOUR & FIVE—RIGHT TO COUNSEL

In addressing Appellant's issues, we do so in a logical rather than sequential order. Issue four, by which Appellant asserts his due process right to a fair trial was violated by the State creating "evidence" intended to "open the door" to extraneous offenses is inextricably tied to his fifth issue, by which he contends his Sixth Amendment right to counsel was violated when an agent of the District Attorney's office surreptitiously contacted him during adversarial proceedings without the benefit of his counsel being present. Agreeing Appellant's rights were violated, we sustain issues four and five.

During Rebecca's testimony, the defense questioned her concerning prior convictions for theft and possession, implying she had concocted a plan to burglarize

4

the Kiewiets' house because she knew they would be out of town. After several exchanges, during recross-examination, defense counsel approached her and asked her to identify the handwriting on a note which was read to the jury. In its entirety, the note provided as follows:

> Chris, I know you are going to court Monday. And I have been asked to be a witness. I have talked to Pat & told him I have not given them a statement. Is there anything I can do to help you[?] Please get a note back to me as soon as possible. Rebecca.

The prosecutor stated "No objection," to which the court responded, "I don't think it was offered . . . ." Defense counsel expressed his intent not to offer the note into evidence. The prosecutor then insisted on offering it because Rebecca had read it in the jury's presence. The note was marked and admitted as State's Exhibit 17.

Rebecca confirmed the note was in her handwriting. She further stated Terry Vogel, an investigator for the Moore County District Attorney's office, had asked her to write it and send it to Appellant. According to instructions from Vogel, she gave the note to the jail cook to deliver to Appellant. Rebecca also testified that Pat informed her Appellant received the note, but the record is unclear concerning whether Appellant actually replied using Pat as a courier. Defense counsel then questioned Rebecca concerning her attempt to solicit a response from Appellant, and she answered affirmatively when asked whether the State assisted in the "ruse."

During his testimony, Vogel explained that he asked Rebecca to write the note to Appellant as part of a separate investigation concerning illicit activities being conducted at the Moore County Jail facility, including an illegal smuggling network. Vogel testified

5

that his review of jail phone calls verified that Rebecca's note was delivered to Appellant.

One of the primary purposes of the Sixth Amendment right to counsel is to preserve the integrity of the attorney-client relationship once it has been established. *Patterson v. Illinois*, 487 U.S. 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988). The Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated" against an accused "whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). Once the adversarial judicial process has been initiated, the right to counsel guarantees an accused the right to have counsel present at all "critical" stages of the criminal proceeding. *United States v. Wade*, 388 U.S. 218, 227-28, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The period from arraignment to trial is "perhaps the most critical period of the proceedings . . . during which the accused requires the guiding hand of counsel . . . ." *Id.* at 226. Interrogation by police, after charges have been brought, is such a critical stage. *Brewer*, 430 U.S. at 401.

Concerning Vogel's claim that the note was part of an investigation involving a separate offense, we note the Sixth Amendment right to counsel is offense specific. *Rubalcado v. State*, 424 S.W.3d 560, 570 (Tex. Crim. App. 2014). In determining what constitutes an "offense" for Sixth Amendment right-to-counsel purposes, and consequently, whether a separate offense is involved, the Supreme Court has resorted to double jeopardy law. *Id.* Offenses are considered separate if they would be

6

considered separate under the *Blockburger* same-elements test. *Id.* at 571 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

ANALYSIS

Here, Appellant's right to counsel for burglary of a habitation had attached prior to the time Vogel asked Rebecca to contact Appellant. Rebecca was a key witness for the State in Appellant's case. Vogel, as an investigator for the Moore County District Attorney's office, was an agent of the State.[4] Rebecca likewise acted as an agent of the State under Vogel's direction to deliberately elicit incriminating statements from Appellant. *See Rubalcado*, 424 S.W.3d at 576 (concluding that sexual assault victim was a government agent where she was recruited by law enforcement to record conversations intended to deliberately elicit incriminating responses from her assailant).

In its defense of Vogel's conduct, the State maintains Rebecca was asked to create the note as part of an on-going investigation into a separate offense (smuggling contraband into a correctional facility) that did not pertain to the pending offense for which the State acknowledges that Appellant's right to counsel had already attached. While we agree the two offenses are separate offenses for purposes of Appellant's right to counsel, we disagree with the State's position that the contact in question did not pertain to the offense at issue in this proceeding.

The note specifically referred to Appellant's upcoming appearance in court on the burglary of a habitation offense that is the subject of this appeal. Rebecca indicated she

---

[4] The State is responsible, in Sixth Amendment context, for the knowledge of all of its actors . . . . *Rubalcado v. State*, 424 S.W.3d 560, 574-75 (Tex. Crim. App. 2014) (citing *Michigan v. Jackson*, 475 U.S. 625, 634, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), *overruled on other grounds*, *Montejo v. Louisiana*, 556 U.S. 778, 797, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009)).

was going to be a witness in that case and that she had not given authorities a statement. She also asked Appellant what she could do to help him in that particular case. The words written by Rebecca at Vogel's request are specifically tied to the pending burglary of a habitation charge and are not solely related to a separate offense for which the right to counsel had not attached. Furthermore, nothing in the note supports the State's contention that it was created solely to investigate a jail smuggling operation. Accordingly, we find the District Attorney's office knowingly circumvented Appellant's right to counsel in this case by using a government agent to elicit incriminating information. *Maine v. Moulton*, 474 U.S. 159, 176, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985); *Massiah v. United States*, 377 U.S. 201, 206, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964).

The note also had the effect of eliciting evidence of an extraneous offense during the State's case-in-chief in violation of Rule 404(b) of the Texas Rules of Evidence. The statements of defense counsel and the prosecutor made during the admission of the note occurred in the presence of the jury. As such, the jury heard evidence that Appellant might possibly be involved in a jail smuggling operation. Under these circumstances, we conclude Appellant's Sixth Amendment right to counsel was violated when a State agent directed Rebecca to contact Appellant while he was represented by counsel, but without his counsel being present. *See Rubalcado*, 424 S.W.3d at 578.

HARM ANALYSIS

Misconduct leading to a total deprivation of the right to counsel at trial is a structural error that defies harmless error review. *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). "The right to counsel is too

fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Johnson v. State*, 169 S.W.3d 223, 230 n.34 (Tex. Crim. App. 2005) (citing *Glasser v. United States*, 315 U.S. 60, 75-76, 62 S. Ct. 457, 86 L. Ed. 680 (1942)). *See Rubalcado,* 424 S.W.3d at 578 (harmless error analysis not conducted after finding a violation of appellant's right to counsel occurred when the State used the complainant to communicate with the accused in an attempt to elicit incriminating statements). When, however, the misconduct leading to error does not amount to a complete denial of counsel, some standard of prejudice or materiality is required to establish a constitutional violation leading to the reversal of a conviction. *See Johnson*, 169 S.W.3d at 229-30. In these situations, appellate courts are guided by the principle that such a violation will lead to a reversal unless an appellate court determines beyond a reasonable doubt that the error did not lead to the conviction or punishment. TEX. R. APP. P. 44.2(a). Because the violation in this case did not lead to a total deprivation of Appellant's right to counsel, it is subject to a harm analysis.

In that regard, Rebecca's note was introduced into evidence at the request of the State. The jury was present and heard the discussions between defense counsel and the prosecutor concerning the origin of the note and its unexplained possession by defense counsel. The note was emphasized by the prosecution during the State's case-in-chief. Because the State's theory behind the note was that it was part of an investigation into jail smuggling operations, the jury was left with the impression that Appellant's character was that of a criminal. The note made an impression on the jury significant enough that, during deliberations, the jury sent a note to the trial judge asking

9

"[w]hat was the response given by Pat to Rebecca from [Appellant]."[5]  The jury's interest in the note and the State's explanation for the note informed the jury that Appellant was in jail and was under suspicion of illegal activities while in jail.  Without the constitutional protection of his right to counsel, Appellant was subjected to incriminating himself.

Furthermore, a violation of an accused's Sixth Amendment right to counsel under the guise of the State's investigation of a separate offense "invites abuse by law enforcement personnel . . . and risks the evisceration of the Sixth Amendment right recognized in *Massiah*."  *Rubalcado*, 424 S.W.3d at 569.  Given the totality of the circumstances surrounding this case, we cannot say beyond a reasonable doubt that the violation of Appellant's right to counsel just days before his trial did not contribute to his conviction.  Accordingly, we conclude the State's violation of Appellant's right to counsel amounted to reversible error.  Issues four and five are sustained.

ISSUES ONE, TWO & THREE—LEGAL SUFFICIENCY

Although we find issues four and five dispositive of this appeal, we nevertheless consider Appellant's sufficiency claims because, if successful, such claims would result in greater relief through a judgment of acquittal.  *Green v. State* 434 S.W.3d 734, 739 (Tex. App.—San Antonio 2014, pet. granted Sept. 17, 2014).  While trial error alone would not bar the State from retrying the case, a finding of legal insufficiency on appeal would interpose a jeopardy bar to retrial.  *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010).

---

[5] The judge replied, "[t]he Court cannot answer your . . . question.  Please continue your deliberations."

10

By his first three points, Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, he maintains the finding of guilt is based on circumstantial evidence impermissibly based on inference upon inference and the victim did not identify any property recovered as stolen from his residence. We disagree.

SUFFICIENCY STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319; *Brooks,* 323 S.W.3d at 912. We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000).

The State was required to show that Appellant, with intent to commit theft, entered a habitation without the effective consent of the homeowner. TEX. PENAL CODE ANN. § 30.02(a) (West 2011). "Enter" means to intrude any part of the body or any

physical object connected with the body. *Id.* at (b). "Entry" is established when the plane of the opening of a house is broken and may be accomplished by placing a foot inside a door frame, by cutting window or door screens, or by breaking door lock or frame. *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd). The entry element of a burglary offense may be proven by inferences, just as inferences may be used to prove the elements of any other offense. *Lopez v. State*, 884 S.W.2d 918, 921 (Tex. App.—Austin 1994, pet. ref'd).

ANALYSIS

Notwithstanding Appellant's assertion that inference upon inference was impermissibly used to convict him, there is direct evidence from which a reasonable juror could infer someone entered the Kiewiets' house, without their consent, and removed Richard's tool box and tools from the premises. Appellant admitted to Rebecca that he had been by the Kiewiets' house. Richard testified a window at the back of the house had been broken to gain entry, and both he and Brenda testified that Appellant did not have their consent to enter the house. Appellant told Sergeant Hayes he had borrowed Wesley's pickup to move, and upon consenting to a search, he fled. The pickup contained Richard's stolen tool box and tools co-mingled with Appellant's belongings.[6] Instead of providing a reasonable explanation for possessing recently stolen property,[7] Appellant fled from Sergeant Hayes after misrepresenting that he was

---

[6] Richard described the stolen red and black tool box, Craftsman saws and drills, and an Ideal bag containing a multimeter as some of the items stolen from his house. Brenda testified she observed what looked like Richard's tool box in the green pickup. *See Luckett v. State*, 586 S.W.2d 524, 526 (Tex. Crim. App. 1979) (identification of stolen property necessary when the only proof of burglary is possession of stolen property).

[7] Where there is independent evidence of a burglary, the unexplained possession of recently stolen goods may constitute sufficient evidence of guilt to support a conviction. *Buchanan v. State*, 780 S.W.2d 467, 469 (Tex. Crim. App. 1989).

12

going inside the house to continue moving.[8]  The jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given all testimony.  *Brooks*, 323 S.W.3d at 899.  Because this Court must resolve evidentiary inconsistencies in favor of the judgment, *id.,* viewing the evidence in a light most favorable to the verdict and drawing all reasonable inferences therefrom, we conclude Appellant's challenge to the sufficiency of the evidence fails.  Issues one, two, and three are overruled.

CONCLUSION

Having found that Appellant's due process rights and Sixth Amendment right to counsel were violated, we reverse the trial court's judgment and remand this cause for further proceedings.

Patrick A. Pirtle
Justice

Do not publish.

---

[8] Flight is admissible as a circumstance from which an inference of guilt may be drawn.  *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).