PD-1648&1649-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/18/2015 3:02:28 PM
Accepted 12/19/2015 10:50:38 AM
ABEL ACOSTA
CLERK

No. _____

# IN THE COURT OF

# CRIMINAL APPEALS OF TEXAS

———————

### ROBERT MICHAEL ARTEAGA, Appellant

### VS.

### THE STATE OF TEXAS, Appellee

———————

\* \* \* \* \* \* \* \* \* \*

From the Thirteenth Court of Appeals, Cause Numbers
13-13-00612-CR & 13-13-00613-CR and
the 424th District Court of Burnet, County, Texas,
Cause Numbers 40138 and 40517

\* \* \* \* \* \* \* \* \* \*

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

Ken Mahaffey
Counsel for Appellant
P. O. Box 684585
Austin, Texas 78768
(512) 444-6557
St. Bar No. 12830050
*Ken_Mahaffey@yahoo.com*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES AND COUNSEL............................................ iii

INDEX OF AUTHORITIES. ................................................................................ iv

STATEMENT OF PROCEDURAL HISTORY. .................................................. vi

STATEMENT OF THE CASE AND SUMMARY OF ARGUMENT. .................. 1

GROUND FOR REVIEW NUMBER ONE........................................................ 2

**When a statute, Sec. 22.001 (f), Tex. Penal Code Ann. (2011)(sexual assault), creates an element of the offense by citing specifically to another penal statute, Sec. 25.01, Tex. Penal Code Ann. (2011) (bigamy), is it proper to ignore the cited statute and permit conviction based on wholly unrelated non-penal statute, i.e., Sec. 6.201, Texas Family Code (2014)(consanguinity)?**

REASONS FOR REVIEW. ................................................................................. 3

1. The Court of Appeals' decision conflicts with another Court of Appeals on the same issue, specifically *Holt v. State*, 03-08-00631-CR, nt. 1 (Tex. App. - Austin, June 2, 2010, pet. ref'd) (mem. op., not designated for publication); *State v. Rosseau*, 398 S.W.3d 769, 777 (Tex. App. - San Antonio 2011) *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013).

2. The Court of Appeals has decided an important question of state or federal law which has not been, but should be, settled by the Court of Criminal Appeals.

3. The Court of Appeals has decided an important question of state or federal law that is in conflict with an applicable decision of the Court of Criminal Appeals, in particular *State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013)(noting challenged statute not facially unconstitutional because it could be applied to conceivable factual situations).

4. The Court of Appeals has misconstrued, a statute, rule, regulation, or

i

ordinance, specifically Sec. 22.011(f), Tex. Penal Code Ann. (2011) and Sec. 6.201, Tex. Family Code (2011).

5 The justices of the Court of Appeals have disagreed on a material question of law necessary to the court's decision, specifically whether Sec. 22.011(f), Tex. Penal Code Ann. (2011) is ambiguous so that an element of the offense could be defined by reference to the Family Code.

GROUND FOR REVIEW NUMBER TWO. ...................................................... 11

**Should a defendant be prevented from arguing that some people might not have viewed certain possessed images as lewd?**

REASONS FOR REVIEW. ................................................................ 11

1. The Court of Appeals has decided an important question of state and federal law which has not been, but should be, settled by the Court of Criminal Appeals.

2. The Court of Appeals has decided an important question of state or federal law that is in conflict with applicable decisions of the U.S. Supreme Court, in particular *Osborne v. Ohio*, 495 U.S. 103, 126 (1990); *New York v. Feber*, 458 U.S. 747, 765 (1982).

PRAYER FOR RELIEF. ................................................................ 13

CERTIFICATE OF SERVICE AND WORD COUNT. ........................................ 13

APPENDIX - Majority and Dissenting Opinions of the Court of Appeals

ii

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

The following is a list of all parties to the trial court's final judgment and their counsel in the trial court:

1. Trial Judge               Dan Mills
                                     424th District Court
                                     1701 E. Polk, Suite 74
                                     Burnet, TX 78611

2. Appellant:              Robert Michael Arteaga
                                     Allan B. Polunsky Unit
                                     01873171
                                     3872 FM 350 South
                                     Livingston, TX 77351

3. Defense Counsel:    Matthew L. Rienstra
                                     Attorney at Law
                                     P.O. Box 91226
                                     Austin TX 78709

4. The State of Texas:  Peter Keim
                                     Burnet Co. D. A.'s Office
                                     P.O. Box 725
                                     Llano, TX 78643

# INDEX OF AUTHORITIES

**CASES**:

**State Cases**:

*Bays v. State*, 396 S.W.3d 580 (Tex. Crim. App. 2013)................................ 6

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991). ........................ 7, 8

*City of Rockwall v. Hughes*, 246 S.W.3d 621 (Tex. 2008)............................ 7

*Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433
     (Tex. 2009) (op. on reh'g). ................................................................ 8

*Ex parte Crouch*, 838 S.W.2d 252 (Tex. Crim. App. 1992)........................... 7

*Holt v. State*, 03-08-00631-CR (Tex. App. - Austin,  June 2, 2010,
     pet. ref'd) (mem. op., not designated for publication). ..................... 3, 8

*State v. Rosseau*, 396 S.W.3d 550 (Tex. Crim. App. 2013). ...................... 3, 9

*State v. Rosseau*, 398 S.W.3d 769 (Tex. App. - San Antonio
     2011) *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013).................... 3, 9

*Tovar v. State*, 165 S.W.3d 785 (Tex. App. -
     San Antonio 2005, no pet.)................................................................ 13

**Federal Cases**:

*New York v. Feber*, 458 U.S. 747, 765 (1982). ...................................... 11, 12

*Osborne v. Ohio*, 495U.S. 103 (1990).................................................... 11, 12

**Statutes**:

Sec. 1.02, Tex. Penal Code Ann. (2014)...................................................... 10

Sec. 22.011(f), Tex. Penal Code Ann. (2011) ................................... 3, 4, 6, 7

Sec. 25.01, Tex. Penal Code (2011)................................................ 4, 6, 8, 10

Sec. 6.201, Tex. Family Code (2011). .................................................. 3, 5, 9

**Secondary Authority**:

2A Singer & Singer, STATUTES AND STATUTORY CONSTRUCTION
§ 46:5 p. 212. (7th ed. 2007)................................................................. 7

BLACK'S LAW DICTIONARY p. 409 (6th Ed. 1990).......................................... 9

# STATEMENT OF PROCEDURAL HISTORY

Appellant was convicted on a plea of not guilty in a single trial of 28 counts of sexual assault of a child involving the same complainant and 23 counts of possession of child pornography all alleged in separate indictments consolidated for trial. He was sentenced to life imprisonment on each of the sexual assault counts and 10 years for each pornography count. All sentences were ordered to be served consecutively.

The cases were appealed to the Third Court of Appeals which transferred them to the Thirteenth Court of Appeals. The Thirteenth Court of Appeals issued a published opinion affirming the Appellant's judgment of conviction on October 22, 2015. Links to the majority opinion and the dissent are as follows:

**Majority Opinion**:
http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=cd964908-bac4-4424-8716-a0ad58a63a66&coa=coa13&DT=Opinion&MediaID=d32ea6ca-e2e1-4f47-a597-cab6a29efd86

**Dissent**:
http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=237574a0-cd13-42c8-bbc8-1aca3ad9f11c&coa=coa13&DT=Opinion&MediaID=5eb2b6f2-5ffe-45cd-b366-bbedb4b2c9be

A motion for rehearing was filed on November 6, 2015 and overruled on December 6, 2015. Appellant now files this Petition for Discretionary Review with the Clerk this Court within thirty (30) days after the Court of Appeals made its final ruling on the cause.

## STATEMENT REGARDING ORAL ARGUMENT

Resolution of the first ground for review this case turns on rules of statutory construction that are increasingly misapplied by reviewing courts. Oral argument would be helpful to clarify exactly what the language of the statute in question means and what guidelines this  Court and the Courts of Appeals should use to interpret it.

In Appellant's second ground, oral argument would be useful because the law needs to be clarified concerning whether an arguable issue raised by the evidence should be a proper subject for jury argument. Certainly the jury ultimately decides the issue but the accused should not be denied the right to urge competing views of the evidence, particularly when he made an offer of proof that would support the argument.

ROBERT MICHAEL ARTEAGA, Appellant

VS.

THE STATE OF TEXAS, Appellee

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW Robert Michael Arteaga, appellant, through counsel, Ken Mahaffey, and respectfully submits this Petition for Discretionary Review.

## STATEMENT OF THE CASE
## AND SUMMARY OF ARGUMENT

The Court of Appeals construed Sec. 22.011(f), Tex. Penal Code Ann. (2011), which defined an element of the offense by citing to the bigamy statute, Sec. 25.01, Tex. Penal Code (2011). The Court held it was ambiguous because the cited bigamy statute did not contain the specific language "prohibited from marrying" found in Sec. 22.011(f), *supra,* just before the citation to the bigamy statute. The Court then held the trial court properly went outside the Penal Code to provide the jury with a definition of that phrase by using a declaratory statute in the Family Code concerning

1

consanguinity. *See* Sec. 6.201, Texas Family Code (2014). Significantly, the consanguinity provision also does not contain the specific statutory phrase relied upon by the Court of Appeals. Appellant argues Section 22.011(f), *supra,* should be construed by its plain language to require the jury be given a definition of bigamy rather than consanguinity. Secondly, even if Section 22.011(f), *supra,* could be considered ambiguous, reference to a statute that does not actually prohibit conduct violates accepted rules of statutory construction.

Appellant also challenges the Court of Appeals holding concerning his right to argue competing views of whether certain images were lewd. The Court of Appeals held the trial court properly ruled that any such argument was a misstatement of the law. While the jury ultimately makes the determination, defendants should not be deprived of the opportunity to argue some persons might not consider an image lewd. Arguments on ultimate issues are a recognized proper subject for closing arguments.

**GROUNDS AND REASONS FOR REVIEW**

**GROUND FOR REVIEW NUMBER ONE (Restated):**

**When a statute, Sec. 22.001 (f), Tex. Penal Code Ann. (2011)(sexual assault), creates an element of the offense by citing specifically to another penal statute, Sec. 25.01, Tex. Penal Code Ann. (2011) (bigamy), is it proper to ignore the cited statute and permit conviction based on wholly unrelated non-penal statute, i.e., Sec. 6.201, Texas Family Code (2014)(consanguinity)?**

[Definition in Jury Charge tracking Sec. 6.201 found at CR 63]

**ARGUMENT AND AUTHORITIES**

**I. Introduction - Jury Given Wrong Definition of Element of the Offense.**

This is a case where Appellant was charged with sexual assault as a first degree felony under Sec. 22.011(f), Tex. Penal Code Ann. (2011). That statute creates an element of the offense to raise a second degree felony to a first degree upon proof of certain facts. Those facts are defined by an explicit reference to the bigamy statute, Section 25.01, Tex. Penal Code (2011). The State could not prove bigamy because both Appellant and the complainant were unmarried. The Court of Appeals found the statute to be ambiguous and held it was proper to go outside the penal code to define the element of the offense under Sec. 6.201, Tex. Family Code (2011)(consanguinity). Appellant asserts the statute is capable of being construed by its own plain language and the jury charge should have only referred to the statute referenced in the provision

3

defining the offense.

**II. Statute in question expressly applies only the bigamy statute to elevate the offense to a first degree felony.**

The statute construed by the Court of Appeals is Sec. 22.001 (f), Tex. Penal Code Ann. (2011). It provides as follows:

> (f) An offense under this section is a felony of the second degree, except that an offense under this section is a felony of the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01.

Sec. 22.001 (f), Tex. Penal Code Ann. (2011).

Section 25.01, Tex. Penal Code Ann. (2011), provides, in relevant part, as follows:

> (a) An individual commits an offense if:
>
>> (1) he is legally married and he:
>>
>>> (A) purports to marry or does marry a person other than his spouse in this state, or any other state or foreign country, under circumstances that would, but for the actor's prior marriage, constitute a marriage; or
>>> (B) lives with a person other than his spouse in this state under the appearance of being married; or
>>
>> (2) he knows that a married person other than his spouse is married and he:
>>
>>> (A) purports to marry or does marry that person in this state, or any other state or foreign country, under

4

circumstances that would, but for the person's prior marriage, constitute a marriage; or

(B) lives with that person in this state under the appearance of being married.

*Id.* In the Court of Appeals, Appellant challenged the trial court's action of defining the aggravating element of the offense in the jury charge by quoting Sec. 6.201, Tex. Family Code (2011)(some marriages void for consanguinity), rather than the explicitly referenced bigamy statute. (CR 63).

Section 6.201, Tex. Family Code (2011), provides as follows:

A marriage is void if one party to the marriage is related to the other as:
(1) an ancestor or descendant, by blood or adoption;
(2) a brother or sister, of the whole or half blood or by adoption;
(3) a parent's brother or sister, of the whole or half blood or by adoption; or
(4) a son or daughter of a brother or sister, of the whole or half blood or by adoption.

*Id.* The Court of Appeals held the trial court properly quoted the consanguinity statute to define the element of the offense that made sexual assault a first degree felony. Slip Op. p. 26.

**III. Without attempting to construe by its plain language the Court of Appeals held statute was ambiguous.**

The majority opinion of the Court of Appeals held that because the phrase "prohibited from marrying" in Section 22.001 (f), *supra*, was not defined in that provision, the statute was ambiguous. Slip Op. p. 19. Rather than first attempting to

5

construe Section 22.001 (f), *supra,* by its plain language, the majority simply stated that a statute is ambiguous when ". . . reasonably well-informed persons may understand a statute to have two or more different senses." *Id. citing Bays v. State*, 396 S.W.3d 580, 584–85 (Tex. Crim. App. 2013). As a result, the majority looked to the legislative history. The majority eventually concluded that because the phrase "prohibited from marrying" did not appear in the bigamy provision of Section 25.01, the legislature must have deliberately omitted it. *Slip Op.* p. 22. Thus, the Court of Appeals held it was reasonable to go outside the penal code to define the phrase by quoting verbatim Section 6.201 of the Family Code declaring some marriages void for consanguinity. *Id.*; (CR 63). There are some obvious problems with this analysis.

**IV. Statute capable of being applied by its plain language.**

The first reason this Court should grant review is that Section 22.011(f) is not ambiguous. It is axiomatic that reviewing courts should first attempt to construe as statute by its plain language. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Statutes should be read as a whole and within the context of the overall statutory scheme in which they are enacted. *Ex parte Crouch*, 838 S.W.2d 252, 254 (Tex. Crim. App. 1992); *see also* 2A Singer & Singer, STATUTES AND STATUTORY CONSTRUCTION § 46:5 p. 212. (7th ed. 2007) (statutory construction should to ". . . harmonize its provisions in accordance with the legislative intent and purpose"). This

6

also means sentences within a statute should also be read as a whole. *See* Singer, *supra* at § 45:5 p. 216.

Under accepted these accepted rules of statutory construction, each of these steps should be undertaken in turn. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *Boykin v. State*, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991). It is only when the statute is incapable of being applied in the manner stated by its language such that it would lead to absurd results, should it be considered ambiguous. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g)("Where text is clear, text is determinative of that intent."); *Boykin, supra at* 786. The analysis by the Court of Appeals skipped these steps in traditional statutory construction.

Section 22.011(f) can be construed by its own plain language. The provision is all one sentence. It specifically references Section 25.01 prohibiting bigamy. The text directly tracks the language of the statute it references. Construing the statute to mean what it says, i.e., that sexual assault becomes a first degree felony when committed in conjunction with bigamous conduct does not lead to an absurd result. *See Entergy, supra* at 437 (statute only ambiguous if application of plain language would lead to absurd results); *and Boykin, supra*, at 785 (departure from literal text last resort when it application would lead to "absurd consequences" that the legislature could not *possibly* have intended")(emphasis in original). Construing the statute to refer to

7

bigamy alone is a logical interpretation. Resort to other codes and extra-textual sources was improper.

**V. Other Courts of Appeal and this Court have applied the plain language analysis.**

While considering slightly different aspects of this issue, the construction advanced by Appellant has been applied by other Courts of Appeal. *See, e.g., Holt v. State*, 03-08-00631-CR, nt. 1 (Tex. App. - Austin, June 2, 2010, pet. ref'd) (mem. op., not designated for publication)(sexual assault became first degree when committed by married individual against one who was not his spouse); *State v. Rosseau*, 398 S.W.3d 769, 777 (Tex. App. - San Antonio 2011) *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013)(statute facially constitutional because the legislature can elect to make sexual assault more serious when it also constitutes bigamy). This also appears to be the construction applied by this Court when it held the statute was facially constitutional because it could be applied in this manner. *State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013)(statute facially constitutional because it could be properly used to "punish bigamist who sexually assault their purported spouses).

**VI. Even if ambiguous, it was error to apply a non-penal declaratory statute to define the phrase "prohibited from marrying."**

A second reason this Court should grant review is that the statute applied by the

Court of Appeals does not even match the phrase the majority used it to define. The lower court held that because the bigamy statute, Sec, 25.01, *supra*, did not contain the phrase "prohibited from marrying," it was necessary to look elsewhere to define the term. Slip Op. p. 22. However, Section 6.201, *supra*, also does not contain the phrase "prohibited from marrying." As Appellant argued below, Section 6.201, *supra*, is not even a penal statute and does not prohibit any conduct.

Section 6.201, *supra*, is a declaratory statute that merely defines the status of a marriage within certain degrees of consanguinity void. *See* BLACK'S LAW DICTIONARY p. 409 (6th Ed. 1990)(a declaratory statute is "enacted for the purpose of removing doubts or putting an end to conflicting decisions in regard to what the law is in relation to a particular matter"); *see also Defferari v. Terry,* 99 S.W. 290, 291(Tex. Comm'n App. (1936)("The [statutory] nature of the relationship . . . is indicated by its use of the restrictive term 'marriage'; and while the relationship is unlawful, it is nevertheless worthy to be designated by the Legislature as 'marriage' not withstanding it is 'deemed null in law.'"). Indeed, the very next section of the Family Code recognizes that a void marriage is still a marriage but simply has a status that cannot be enforced. *See* Sec. 6.202, Texas Family Code (2011)(marriage void for bigamy "becomes valid when the prior marriage is dissolved"). Section 6.201, *supra*, does not qualify as a statute defining "prohibited from marrying" because it only

9

renders an actual or putative marriage as void.

On the other hand, Section 25.01, *supra*, expressly prohibits certain marriages. Moreover, only penal statutes should be considered to define "prohibited from marrying." *See* Sec. 1.02, Tex. Penal Code Ann. (2014)("general purposes of this code are to establish a system of prohibitions, penalties and correctional measures"). As a result, application of a declaratory statute rather than an applicable penal statute was an improper application of the accepted rules of statutory construction. This Court should grant review to provide guidance to the Courts of Appeal in this State.

**GROUND FOR REVIEW NUMBER TWO:**

> **Should a defendant be prevented from arguing that some people might not have viewed certain possessed images as lewd?**
>
> [Jury Argument and Ruling found at RR8 27 - 28]

## ARGUMENT AND AUTHORITIES

Appellant attempted to argue that others might not have considered the images Appellant possessed were lewd. The trial court sustained the State's objection and went further by instructing the jury that this was a misstatement of the law. (RR8 27 - 28). The Court of Appeals held this was not an abuse of discretion. Slip Op. p. 29 - 30.

The argument at issue is as follows:

> [DEFENSE COUNSEL] MR. RIENSTRA: And let me point out that, yes, to a stranger those photos are lewd, but nurses and doctors -- and you are going to see these photos, and I've seen these photos, and as a father and as a lawyer in this case, I don't view them as lewd. I know that you have to make a decision whether or not when my client looked at them he was viewing them as lewd.
>
> [PROSECUTION] MR. KEIM: Judge, I would object. That's a misstatement of the requirements of the law, whether the defendant viewed them as lewd.
>
> THE COURT: That is a misstatement. It's just -- the jury determines if they're lewd.
>
> [STATE'S COUNSEL] MR. KEIM: I would ask that the jury be instructed to disregard that last statement.
>
> THE COURT: You are instructed to disregard. The instructions are what they are and they tell you that you determine if they're lewd photographs.

(RR8 27 - 28); Slip Op. p. 27. Appellant argued to the Court of Appeals that, while the jury determines the ultimate facts, it was improper to deny argument that also urged consideration of others' interpretations of how the images should be classified.

Due process requires that the character of the image be an essential element of any proscription on possession of child pornography. *Osborne v. Ohio*, 495U.S. 103, 126 (1990) (reversing conviction where jury not required to find the image was lewd under statute). As such, the mental state of the defendant extends beyond the mere possession itself. *New York v. Feber*, 458 U.S. 747, 765 (1982) ("As with all obscenity laws, criminal responsibility cannot be imposed without some element of scienter on

11

the part of the defendant."). Although the question of whether an image is pornography under the statute is ultimately for the jury to decide, it is not a misstatement of the law to argue others' opinions, including the defendant's, can be considered in making this determination.

The Court of Appeals acknowledged that Appellant presented evidence on the issue. Slip Op. p. 27. Yet the Court held that he was not permitted to argue that issue. *Id*. Because scienter is an essential element of the offense, *see Osborne, supra; Feber, supra*, the Court of Appeals ruling has the effect of denying all defendants of the right to urge that alternative interpretations of the images can be considered. This Court should grant review to clarify the proper scope of arguments concerning conflicting perceptions of certain images. The term "lewd" has a ". . . common meaning that jurors can be fairly presumed to know and apply. . ." *See Tovar v. State*, 165 S.W.3d 785, 790 (Tex. App. - San Antonio 2005, no pet.). Therefore, when there is evidence to support the argument, a defendant should be permitted argue that different persons could have different views concerning the images at issue.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, appellant respectfully prays that this Court grant Discretionary Review and upon submission, reverse the judgment of the Court of Appeals.

Respectfully Submitted,

*Ken Mahaffey*

Ken Mahaffey
Counsel for Appellant
P.O. Box 684585
Austin, Texas 78768
Phone & Fax (512) 444-6557
St. Bar. No. 12830050
*Ken_Mahaffey@yahoo.com*

## CERTIFICATE OF SERVICE AND WORD COUNT

The above signature certifies that on this day, December 18, 2015, a true and correct copy of the foregoing Petition this document was sent by electronic service to the Burnet County District Attorney's Office, P.O. Box 725, Llano, TX 78643 and to the State Prosecuting Attorney, P.O. Box 12405, Austin, TX 78711 and mailed to the appellant, Robert Michael Arteaga, Texas Department of Crim. Just., Allan B. Polunsky Unit, 3872 FM 350 South, Livingston, TX 77351. The above signature also certifies that this document contains 3973 words in compliance with Rule 9.4 (I) (2) (D), Tex. R. App. Proc. (not to exceed 4,500 words).

13

**APPENDIX - MAJORITY AND DISSENTING OPINIONS**

**FROM THE COURT OF APPEALS**



## NUMBERS 13-13-00612-CR and 13-13-00613-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ROBERT MICHAEL ARTEAGA,                                    Appellant,

v.

THE STATE OF TEXAS,                                       Appellee.

### On appeal from the 424th District Court
### of Burnet County, Texas.

## O P I N I O N

### Before Justices Benavides, Perkes, and Longoria
### Opinion by Justice Benavides

Appellant, Robert Michael Arteaga, appeals his convictions in separate cause numbers for multiple counts of sexual assault of a child and possession of child pornography, a first and third degree felony respectively. *See* TEX. PENAL CODE ANN. §§ 22.011, 43.26 (West, Westlaw through 2015 R.S.). By two issues, Arteaga argues: (1)

the trial court committed egregious error by charging the jury under the consanguinity statute rather than requiring proof of bigamy as specified in the sexual assault statute; and (2) the trial court committed error by preventing his trial counsel from arguing to the jury that they could consider Arteaga's and other's perspectives on whether the images possessed were lewd.   We affirm.

## I.   BACKGROUND[1]

In cause number 13-13-00612-CR, a jury convicted Arteaga of twenty-three counts of sexual assault of a child.[2]   *See* TEX. PENAL CODE ANN. § 22.011.   The complainant, HSB Doe ("Doe"), was his biological daughter.[3]   Sexual assault of a child is a second degree felony, except it can rise to a first degree felony if:   "the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01."   TEX. PENAL CODE ANN. § 22.011(f).   Arteaga was charged with sexual assault of a child he was "prohibited from marrying", Doe, in the indictment.   This charge made all the counts charging him under this cause number first degree felonies.   *Id.*   Section 25.01 defines the offense of bigamy.   *See* TEX. PENAL CODE ANN. § 25.01 (West, Westlaw through 2015 R.S.).   The jury charge included the definition for consanguinity from the Texas Family Code, which specifies what would constitute a void marriage.

---

[1] Pursuant to a docket-equalization order issued by the Texas Supreme Court, the two appeals were transferred to this Court from the Third Court of Appeals in Austin, Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).   Appellate Cause No. 13-13-00612-CR is the appeal from trial court cause number 40517.   Appellate Cause No. 13-13-00613-CR is the appeal from the trial court cause number 40138.

[2] Arteaga's two indictments were tried during a consolidated trial.   *See* TEX. PENAL CODE ANN. § 3.02 (West, Westlaw through 2015 R.S.).   Our analysis allows us to consider them together one opinion.

[3] The victim was identified in the indictment and at trial by the pseudonym, "HSB Doe."

2

*See* Tex. Family Code Ann. § 6.201 (West, Westlaw through 2015 R.S.). Additionally, a special issue was also submitted along with the jury charge asking the jury: "Do you find from the evidence beyond a reasonable doubt that the Defendant, Robert Michael Arteaga, was prohibited from marrying [Doe]?" Arteaga did not object to the inclusion of the definition of consanguinity in the jury charge. The jury convicted Arteaga of all twenty-three counts of sexual assault of a child, answered yes to the special issue, and sentenced him to life imprisonment in the Texas Department of Criminal Justice—Institutional Division ("TDCJ-ID") on each count.

In cause number 13-13-00613-CR, the jury convicted Arteaga of seventeen counts of possession of child pornography.[4] *See* Tex. Penal Code Ann. § 43.26. The illegal photographs at issue were found on Arteaga's personal computer and depicted his daughter, Doe, engaging in sexual acts. Arteaga maintained that he did not consider the photographs to be child pornography. The jury found Arteaga guilty on all counts of the jury charge and sentenced him to ten years imprisonment in the TDCJ-ID and assessed a $10,000 fine on each count. The trial court sentenced Arteaga accordingly and ordered that all sentences be served consecutively. *See* Tex. Penal Code Ann. § 3.03 (West, Westlaw through 2015 R.S.).

During trial, the State put on multiple witnesses, including the complainant, Doe. Doe testified that Arteaga had been molesting her since the age of four. Doe made an outcry to her high school counselor at the age of fifteen. Doe testified that the

---

[4] The State had originally charged Arteaga with twenty-three counts of possession of child pornography, but abandoned six of the counts prior to submitting the charge to the jury. *See* Tex. Penal Code Ann. § 43.26.

3

molestation had occurred in three different counties throughout her life: Harris, Blanco, and Burnet Counties. Doe stated that Arteaga began touching her genital area around the age of four, and he told Doe it was "something special that they shared" and "not to tell anyone." When Doe was around six or seven years old, she testified Arteaga began having them both perform oral sex on each other. Doe stated that Arteaga began having vaginal intercourse with her around the third grade. She also testified that Arteaga took videos of them having vaginal intercourse at least twice and put the videos up on the internet. While filming the videos, Arteaga made Doe wear masks to hide her face. Doe identified the masks during trial from photographs taken by police at Arteaga's home.

Arteaga told Doe she was special and if she became pregnant, they would get married. Doe testified that Arteaga had a vasectomy to prevent her from getting pregnant, and she had her own bedroom next to his so he would have easier access to Doe.[5] On her fourteenth birthday, Arteaga took Doe to San Antonio, purportedly to visit the Alamo. Instead of going to the Alamo, Arteaga got a hotel room where they "drank liquor and had sex." Around that time, Doe testified Arteaga began penetrating Doe's anus with his penis. She stated that Arteaga had intercourse with her repeatedly, but that it became more frequent as she got older. By the time she was around fourteen, Doe and Arteaga would have vaginal intercourse at least once a week "[e]verytime, like, [appellant's girlfriend] would go to the store." Each incident would normally include Doe performing oral sex on Arteaga as well. Doe testified that Arteaga would create situations where they would be alone: "Whenever we [needed] groceries he would send

---

[5] Of the five children in the home, only Doe had her own bedroom. The other children shared bedrooms across the house from Arteaga and Doe.

4

[appellant's girlfriend] to the store and have me stay or he would text me and be like tell [appellant's girlfriend] you don't feel good or you just want to stay home, you just don't want to go with her to the store." Doe testified appellant's girlfriend would go to the store often because there were seven people living in the household.

Doe also testified that Arteaga used a variety of adult "sex toys" on her. During trial, Doe identified many of the "toys" found at Arteaga's home. Doe also identified several pornographic videos seized from Arteaga's home because she stated Arteaga would make her watch them. Several nude photographs of Doe were found on Arteaga's computer. Doe testified she took those photographs with her cell phone at Arteaga's request, mostly when she was visiting her grandparents for the summer. Doe said her older sister knew about the molestation and acted as a lookout for Arteaga. At one point, Doe testified that Arteaga had spoken about a sexual encounter involving Doe, her sister, and him, but that it never occurred. Doe stated she learned the relationship she had with Arteaga was wrong as she got older and asked him to stop. Arteaga said he would stop their relationship but it would "break his heart." Both Doe and her older sister went to the school counselor to make the outcry.

After her outcry, Doe and her siblings were removed from Arteaga by Texas Child Protective Services and placed with Arteaga's parents in Galveston. Doe testified Arteaga's family pressured her to recant the allegations. Arteaga called Doe repeatedly and devised a story for Doe to tell law enforcement. Doe said that she did recant her story to police, but would not have done so without the pressure she felt from her family.

5

The State also called Amy Callaway, the forensic interviewer, to testify. Callaway testified about "grooming" and the effect it can have on children who are abused. Callaway stated it was common for children to outcry and then recant. In certain cases, the children will then reaffirm the outcry after time passes. Callaway said it was very common for children who were victimized to still love and want to be around the perpetrator, and that this was one of the worst cases of abuse she had ever seen.

Doe was examined by a sexual assault nurse examiner ("SANE nurse") following her outcry and interview. The SANE nurse identified a tear to Doe's hymen typical with sexual penetration prior to sexual maturity. She stated Doe had a significant amount of scar tissue in her genital area, which showed her that the abuse had been occurring for a long time. Doe also had healing tears to her anus. The SANE nurse also found a genital wart on Doe, but could not conclude with certainty that it was a result of sexual intercourse.

Arteaga's girlfriend was called by the State to testify. She stated that Arteaga was very controlling and his behavior with Doe was very different from the other children in the household. She stated sometimes she felt like Doe was Arteaga's girlfriend and she was the child. The girlfriend testified they did use "sex toys" in their intimate encounters, but she did not recognize all the "toys" that were found at the home. She also stated Arteaga and she did not use lubricant, even though it was found with the "toys" as well. The girlfriend also testified that after Doe was removed from the home, she overheard Arteaga on the phone with Doe and her sister. He was telling the girls to "stick to their stories" and would not speak to the girls in her presence. The girlfriend stated that now "she felt stupid" and all the behavior she had witnessed over their years together

6

"makes sense."

Arteaga testified in his own defense and stated Doe made the allegations up because she wanted to live with her biological mother, who was less strict than he was. He stated that his older daughter had shown him the nude photographs of Doe on Doe's cell phone, saying that Doe was sending them to her boyfriend. Arteaga testified that he had his older daughter send the photos to his cellphone and he placed them on his laptop computer so it would be easier to confront Doe with them. However, Doe did not recall being confronted with the photographs during her testimony. After a finding of guilty by the jury, this appeal followed.

## II. JURY CHARGE ERROR

By his first issue, Arteaga argues "it was error to charge the jury under the consanguinity statute rather than requiring proof of bigamy as specified in the sexual assault statute." We disagree.

### A. Standard of Review

"In analyzing a jury-charge issue, our first duty is to decide if error exists." *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2014, pet ref'd.) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g)). Only if error is found, do we then consider whether an objection to the charge was made and analyze for harm. *Id.* "The degree of harm necessary for reversal depends upon whether the error was preserved." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). If "an error is preserved with a timely objection. . . . then the jury-charge error requires reversal if the appellant suffered some harm as a result of the error." *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (citing *Almanza*, 686

S.W.2d at 171).

The Court of Criminal Appeals "has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal." *Rodriguez,* 456 S.W.3d at 280. But if the "defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for 'egregious harm' under *Almanza*." *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008). As in this case, when an "appellant d[oes] not object to the charge, the error does not result in reversal 'unless it was so egregious and created such harm that appellant was denied a fair trial.'" *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (citing *Almanza*, 686 S.W.2d at 171). "Errors that result in egregious harm are those that affect the 'very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Warner,* 245 S.W.3d at 461–62 (citing *Hutch*, 922 S.W.2d at 171).

The failure to preserve jury-charge error is not a bar to appellate review but rather establishes the degree of harm necessary to the reversal. *Warner*, 245 S.W.3d at 461. To establish harm, the "appellant must have suffered actual, rather than theoretical, harm." *Warner*, 245 S.W.3d at 461. Neither the State nor the appellant bears the burden on appeal to prove harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## B. Applicable Law

A person commits the offense of sexual assault of a child, a second-degree felony, if the person intentionally or knowingly:

> (A) causes the penetration of the anus or sexual organ of a child by any means;

8

(B)     causes the penetration of the mouth of a child by the sexual organ of the actor;

(C)     causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(D)     causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(E)     causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

TEX. PENAL CODE ANN. § 22.011(a)(2). "Child" is defined as "a person younger than 17 years of age." *Id.* § 22.011(c)(1). The punishment range of § 22.011 is described in subsection f, which states:

> An offense under this section is a felony of the second degree, except that an offense under this section is a felony of the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01.

*Id.* § 22.011(f). Arteaga was charged by the indictment under § 22.011(f) with a first degree felony on each count of sexual assault because the State alleged in each count of the indictment that Doe was someone that Arteaga was "prohibited from marrying." *Id.* Section 25.01 ("the bigamy statute") of the Texas Penal Code contains the following language:

(a)     An individual commits an offense if:

(1)     he is legally married and he:

(A) purports to marry or does marry a person other than his spouse in this state, or any other state or foreign country, under circumstances that would, but for the actor's prior marriage, constitute a marriage; or

(B) lives with a person other than his spouse in this state under the appearance of being married; or

9

> (2) he knows that a married person other than his spouse is married and he:
>
> (A) purports to marry or does marry that person in this state, or any other state or foreign country, under circumstances that would, but for the person's prior marriage, constitute a marriage; or
>
> (B) lives with that person in this state under the appearance of being married.

*See* TEX. PENAL CODE ANN. § 25.01.

## C. Discussion

### 1. Error Analysis

Arteaga argues that the trial court committed reversible error by including the definition of a "void marriage" from the Texas Family Code in the jury charge. *See* TEX. FAMILY CODE ANN. § 6.201. The trial court included in the abstract section of the jury charge the following definition:

> You are instructed that a marriage is void if one party to the marriage is related to the other as:
>
> (1) an ancestor or descendant, by blood or adoption;
>
> (2) a brother or sister, of the whole or half blood or by adoption;
>
> (3) a parent's brother or sister, of the whole or half blood or by adoption; or
>
> (4) a son or daughter of a brother or sister, of the whole or half blood or by adoption.

*Id.* If error were found from the inclusion of this definition, it would be required to be "egregious harm" in order to warrant a reversal of the trial court's verdict because Arteaga did not object to the inclusion of this definition in the jury charge. *See Oursbourn*, 259

10

S.W.3d at 174.

"It is the application paragraph of a jury charge which authorized conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury." *Ramirez v. State*, 967 S.W.2d 919, 922 (Tex. App.— Beaumont 1998, no pet.). The "abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *see also Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). *Ramirez* goes on to state:

> An abstract statement of the law that goes beyond the allegations in the indictment ordinarily will not present reversible error because ordinarily such expansion on the indictment's allegations are effectively restricted by the charge's application of the law to the facts, which limits the jury's deliberations to the allegations in the indictment supported by evidence.

*Id.*; *see also Sandig v. State*, 580 S.W.2d 584, 586 (Tex. Crim. App. 1979). The Court of Criminal Appeals has evaluated cases on this issue and explained:

> Superfluous abstractions, those not necessary to an understanding of concepts or terms contained in the application paragraph, are generally innocuous. Reversible error only occurs in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph. . . .The inclusion of a merely superfluous abstraction, therefore, never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs."

*Ramirez*, 967 S.W.2d at 922 (citing *Plata*, 926 S.W.2d at 302).

The Court of Criminal Appeals has held that if a jury charge improperly "'singles out a specific type of evidence and tells the jury that it may infer an element of the crime' from that evidence," then there is error. *Kirsch*, 357 S.W.3d at 651 (citing *Brown v. State*,

11

122 S.W.3d 794, 800–01 (Tex. Crim. App. 2003)). However, our sister courts have found that even when there is error due to improper definitions, the error is frequently harmless. *See Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (holding that the trial court's inclusion of per se definition of intoxication did not expand the allegations against the defendant and was not error); *Baggett v. State*, 367 S.W.3d 525 (Tex. App.—Texarkana 2012, pet. ref'd) (holding that the trial court's definition of "normal use" was harmless error); *Trevino v. State*, 440 S.W.3d 722 (Tex. App.—Amarillo 2013, no pet.) (holding that even though trial court's definition of female "genitalia" was a comment on evidence and invaded province of jury, the error was harmless).

Here, Arteaga was charged with twenty-three counts of sexual assault of a child. The jury charge in this cause number given by the trial court was sixteen pages long.[6] The complained-of definition is found on page one of the charge in the abstract section. The definition of a "void marriage" was not referenced or necessary in the application paragraph of the charge. Here, as in *Ramirez*, the application paragraph limited the circumstances the jury could convict Arteaga on "to circumstances alleged in the indictment." *Id.* Error was found to be harmless in *Ramirez*. *Id.* We also find here that the inclusion of the definition of "void marriage" in the abstract portion of the jury charge is not error and did not single out any type of evidence necessary to infer an element of the crime of sexual assault of a child. We overrule Arteaga's first issue.

---

[6] Arteaga's trial consisted of both of his cases simultanetously. There were two separate jury charges given by the trial court. This issue deals solely with the charge for the sexual assault case.

**2.    Harm Analysis**

However, even assuming the definition was error by the trial court, did it constitute egregious harm?   In order to qualify as an error that could have risen to the level of egregious harm, Arteaga must show that the definition from family code section 6.02 "affect[ed] the 'very basis of [his] case, 'deprive[d him of] a valuable right,' or 'vitally affect[ed one of his] defensive theor[ies].'"   *Warner,* 245 S.W.3d at 461–62 (citing *Hutch*, 922 S.W.2d at 171); *see* TEX. FAMILY CODE ANN. § 6.201.   When determining whether a defendant suffered harm, "the reviewing court must consider:   (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole."   *Rodriguez,* 456 S.W.3d at 280; *see also Wooten v. State,* 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

**a.    Entire Jury Charge**

The first step required to analyze jury charge error is to evaluate the entire jury charge.   *See Warner*, 245 S.W.3d at 461.   The

> trial court is required to give the jury a written charge 'setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.'

*Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (quoting TEX. CODE CRIM. PROC. art. 36.14).   "We have generally held that, if a jury-charge instruction 'is not derived from the [penal] code, it is not 'applicable law'' under art. 36.14."   *Id.* (quoting *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)).   "Texas Government Code § 311.011 provides that statutorily undefined words and phrases shall be 'construed

13

according to the rules of grammar and common usage.'" *Id.* at 650 (quoting TEX. GOV'T. CODE ANN. § 311.011 (West, Westlaw through 2015 R.S.). Normally, in looking at jury charge error, the instructions must be construed as a whole and not by isolated extracts, excerpts, or paragraphs. *See Smith v. State*, 959 S.W.2d 1, 27 (Tex. App.—Waco 1997, pet. ref'd) (holding that whether a jury charge comments on weight of evidence is determined by looking at the jury charge as a whole, not isolated statements); *see also Joseph v. State*, No. 13-11-00461-CR, 2013 WL 1461841, at *7 (Tex. App—Corpus Christi 2013, pet. ref'd.) (mem. op., not designated for publication). However, even when an abstract charge is erroneously given on a theory of law, without specific application to the facts of the case, the court of criminal appeals have found this is not error. *Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994); *see Lewis v. State*, 815 S.W.2d 560, 562 (Tex. Crim. App. 1991) (holding there was no error in giving superfluous abstract instruction on transferred intent when the issue of transferred intent was not incorporated into the application paragraph).

In analyzing the jury charge as a whole, the definition of "void marriage" was only found on the beginning part of a lengthy jury charge. Additionally, the definition was contained in the abstract section of the charge, which acts as a glossary of sorts for the jury to refer to. The law that governed the case was found in the application section of the charge and contained no reference to the "void marriage" definition. Although the dissent states the proper statutory definition for "prohibited from marrying" is contained in section 25.01 of the penal code, the language is not found in the section. *See* TEX. PENAL CODE ANN. § 25.01. "Prohibited from marrying" is not defined in any section of the penal code. Since no definition was available within the penal code, "prohibited from

14

marrying" should have been determined according to the "rules of grammar and common usage." *See Kirsch,* 357 S.W.3d at 650. Since there was no penal code definition of "prohibited from marrying," and "void marriage" was not an element of the offense Arteaga was charged with, the inclusion of the definition of "void marriage" was not an "incorrect or misleading statement of law" and harmless. *See Kirsch,* 357 S.W.3d at 650–51; *Plata*, 926 S.W.2d at 302. Any harm would be minimal.

### b.   State of the Evidence

Second, we must look at the state of the evidence, including the contested issues and weight of probative evidence. *See Warner*, 245 S.W.3d at 461. The State called multiple witnesses throughout this trial. Although Doe was the State's main witness, the evidence presented was overwhelming to prove that Arteaga committed sexual assault. The forensic interviewer testified to the graphic, specific details given by Doe and explained why some victims recant allegations of abuse. The SANE nurse testified regarding to the scar tissue that was present on Doe's genital area that indicated a history of abuse. Arteaga's girlfriend testified to the behavior she witnessed between Arteaga and Doe and how it all "made sense" now. None of the evidence was ever about Arteaga contesting the fact that Doe was his biological daughter, that Arteaga was not married, or how he would not be allowed to marry Doe. Based on the evidence presented, the inclusion of the definition of "void marriage" would have been minimal in terms of harm.

### c.   Argument of Counsel

Third, we must look to the argument of counsel. *Id.* In closing arguments, the State did allude to the definition given by the trial court, albeit briefly. The prosecutor stated:

> We, of course, know that [Doe] is not the defendant's spouse and we also know that you can't marry your daughter. We don't even need to – we all know that. You can't marry your daughter and the Court sets it out here that a marriage is void if it's to an ancestor or descendant by blood or adoption and then there's another categories. You can't marry your sister. You can't marry your brother, et cetera.

However, the substantial remainder of the prosecutor's closing argument went to the facts of the case. Although the State did allude to the definition, it was not repeatedly brought up. The definition was addressed at the beginning and briefly. Since the State did address the definition, that could weigh slightly towards harm.

### d.     Other Relevant Information

Fourth, we can look to any other relevant information revealed by the record of the trial as a whole. *Id.* Throughout the trial, Arteaga's defense was that Doe was making up these allegations. Nothing was ever raised by either side about bigamy, void marriage, or even anyone wanting to get married. The State was not required to prove bigamy as bigamous conduct was not alleged in the indictment. The trial court used caution to make sure the enhancement element was found by sending Special Issue #1 to the jury to find true or not true. The jury did not send out any jury notes relating to the definition of "void' marriage, the special issue, or ask for clarification regarding these matters. It is clear the jury understood what "prohibited from marrying" meant due to their affirmative response to Special Issue #1. It was also clear from the testimony that Doe was Arteaga's biological daughter. Since there is no definition in the penal code regarding "prohibited from marrying," it should be defined by each juror from common usage. The jury understood that a parent cannot marry their child and such a relationship would be "prohibited" based on their own personal knowledge.

16

Although some of the elements might show slight harm, none of the four factors show the inclusion of the family law definition rise to the level of egregious harm. *See See Warner*, 245 S.W.3d at 461. Arteaga must show "actual, not theoretical harm" in order to rise to the level of egregious harm. Actual harm was not shown here, and as such, the proper ruling is the error, if any, was harmless and not egregious. As such, we affirm the conviction of sexual assault of a child as a first-degree felony on all twenty-three counts.

### III. PENAL CODE § 22.011(F)

Arteaga also argues that he was convicted on a basis not authorized by statute because the State did not prove the element of bigamy. The dissent is persuaded by Arteaga's argument that the "plain language" of § 22.011(f) can only be read as a first-degree felony if Arteaga was a person prohibited from marrying Doe *and* Arteaga was involved in a bigamous marriage.[7] *See* TEX. PENAL CODE ANN. § 22.011(f) (emphasis added). We disagree with this argument and believe section 22.011(f)'s language is ambiguous and Arteaga's argument would lead to absurd results that could not have been intended by the Legislature. *See Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014); *see also Price v. State*, 434 S.W.3d 601, 605 (Tex. Crim. App. 2014). As such, this ambiguity should be addressed by this Court.

---

[7] Although the dissent states that § 22.011(f) would require Arteaga to be prohibited from marrying Doe because *either* Doe or Arteaga are married, this is irrelevant. Doe was a fourteen year-old child at the time of her outcry and would be legally unable to marry based on her age. *See* TEX. FAMILY CODE ANN. §§ 2.101, 2.102. Therefore, it is not a point that needs to be further considered.

17

### a.     Statutory Interpretation

In construing a statute, we normally give deference to the plain meaning of the words.    *See Chase*, 448 S.W.3d at 11.    "Thus, if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning." *Ex Parte Hernandez*, 275 S.W.3d 895, 899 (Tex. Crim. App. 2009); *see also Smith v. State*, 789 S.W.2d 590, 592 (Tex. Crim. App. 1990).    "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."    *Hernandez*, 275 S.W.3d at 899 (citing *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991) (en banc)).

But "appellate courts must construe a statute in accordance with the plain meaning of its text unless the language of the statute is *ambiguous* or the plain meaning would *lead to absurd results* that the legislature could not have possibly intended."    *Chase*, 448 S.W.3d at 11 (emphasis added); *see also Price*, 434 S.W.3d at 605.    "When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way."[8]    *Hernandez* at 900; *see also Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (en banc).    If the

> plain language of a statute would lead to absurd results, or if the language
> is not plain but rather ambiguous, then *and only then*, out of absolute

---

[8]  In *Price*, the Texas Court of Criminal Appeals made modifications to the continuous sexual assault of a child statute.    *See Price*, 434 S.W.3d 601 (Tex. Crim. App. 2014); *see also* Tex. Penal Code Ann. § 21.02 (West, Westlaw though 2015 R.S.).    The court determined that the Legislature could not have intended that attempt offenses were not included in the list of sexual crimes that could fit under the continuous sexual assault statute.    *See id.*    It was an event that had not been anticipated, and the court made the proper modifications through case law.    We believe the same situation exists here as the Legislature could not have intended the outcome Arteaga is suggesting.

18

necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative interpretations of the statute or legislative history.

*Id.* at 785–786 (emphasis in original). A "statute is ambiguous when the statutory language may be understood by reasonably well-informed people in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding." *Price*, 434 S.W.3d at 605; *Bays v. State*, 396 S.W.3d 580, 584–85 (Tex. Crim. App. 2013) (ambiguity exists when reasonably well-informed persons may understand a statute to have two or more different meanings). Some

> extratextual factors include but are not limited to: (1) the object sought to be obtained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.

*Chase*, 448 S.W.3d at 11.

**b.      Analysis**

We find that § 22.011(f) is not clear and unambiguous. *See* TEX. PENAL CODE ANN. § 22.011(f). The dissent would hold that to interpret § 22.011(f) to require proof under § 25.01 appears consistent with interpretations by other Texas appellate courts. *See* TEX. PENAL CODE ANN. §§ 22.011(f), 25.01. However, the cases relied upon by the dissent are distinguishable from the case at hand. The dissent cites to *State v. Rosseau*, *State v. Hernandez*, and *Holt v. State* to hold that bigamy is required in order to prove the enhancement element of 22.011(f). *See State v. Rosseau*, 398 S.W.3d 769, 777 (Tex. App.—San Antonio 2011), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013); *State v. Hernandez*, 395 S.W.3d 258, 260–61 (Tex. App.—San Antonio 2012, no pet.); *Holt v.*

19

*State*, No. 03-08-00631-CR, 2010 WL 2218543, at *1 n.1 (Tex. App.—Austin June 2, 2010, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 22.011(f). However, none of those cases address the issue we are confronted with here, and instead the present case appears to present an issue of first impression.

Rosseau was indicted for sexual assault of a child with each count of his indictment containing the whole of section 22.011(f). *See* TEX. PENAL CODE ANN. § 22.011(f); *see also Rosseau*, 398 S.W.3d at 772. Additionally, Rosseau was married at the time the abuse occurred. *Id.* On appeal, the State challenged the granting of a pre-trial motion to quash the indictment. *Rosseau*, 396 S.W.3d at 552. Rosseau raised an issue regarding the constitutionality of the statute as a whole, claiming it was facially unconstitutional because it punished "a class of individuals" more severely for being married. *Id.* at 556. However, the Court of Criminal Appeals did not agree that the statute was facially unconstitutional. *Id.* at 558. Since the entire section of 22.011(f) was used in the indictment and jury charge error was not an issue complained of, *Rosseau* does not clarify any ambiguity in the statute regarding the reference to § 25.01, especially in regards to jury charge language. *See id.;* TEX. PENAL CODE ANN. §§ 22.011(f), 25.01.

*Hernandez* is likewise distinguishable from the present case as it also refers to a pre-trial motion to quash the indictment. *See Hernandez*, 395 S.W.3d at 258. Hernandez argued that the language in the indictment that the victim was "a person whom Hernandez was prohibited from marrying under Section 25.01" did not give her sufficient notice of how the victim was a person who Hernandez was prohibited from marrying. *Id.* at 260; *see also* TEX. PENAL CODE ANN. § 25.01. The trial court found that tracking the

20

indictment was sufficient notice. *Id.* at 262. Again, *Hernandez* is factually distinguishable because it deals with a pre-trial motion to quash and Hernandez was a married individual. *See id.* at n. 1. No challenge was made to the language used or jury charge definitions. *See id.*

*Holt* is a case out of the Third Court of Appeals, where this case is transferred from. *Holt*, 2010 WL 2218543. *Holt* is also factually distinguishable from this case because it deals with a double jeopardy claim. *Id.* at *2. However, a footnote in *Holt* that states:

> Sexual assault is a first degree felony if the victim was a person whom the defendant was prohibited from marrying under penal code section 25.01. TEX. PENAL CODE ANN. § 22.011(f) (West Supp. 2009). Section 25.01 prohibits bigamy. *Id.* § 25.01. The evidence shows that appellant was legally married to another person at the time he sexually assaulted the complainant, and thus he was prohibited from marrying the complainant under section 25.01(a)(1).

*Id.* at *4, n 1. The Austin Court of Appeals puts "prohibited from marrying" and ties it to the bigamy statute of § 25.01 because Holt was married at the time the assault with the complainant occurred. *See* TEX. PENAL CODE ANN. § 25.01. Our current case is distinguishable from all the cases because Arteaga was not married at any relative time during the assaults of Doe, and therefore, could not have committed the offense of bigamy.

Even though the dissent believes that all the cases cited require both proof of § 22.011(f) and § 25.01 in order to prove the enhanced punishment range, this cannot be what the legislature intended. *See* TEX. PENAL CODE ANN. §§ 22.011(f), 25.01. First, 25.01 does not have any reference to the language used in the indictment in this case of "prohibited from marrying." *See id.* The language of 22.011(f) does incorporate the

21

language of "purports to marry" and "living under the appearance of being married" which is found in section 25.01. *See id.* Since we should be mindful that "every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause, and word is to be given effect if reasonable and possible," then it would be a reasonable interpretation that the phrase "prohibited from marrying" was deliberately not included in section 25.01. *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963); *see* TEX. PENAL CODE ANN. §§ 22.011(f), 25.01. Therefore, since the language "prohibited from marrying" used in section 22.011(f) was not used in section 25.01, proving bigamy under section 25.01 would not be a requirement in order for the State to charge using "prohibited from marrying" in section 22.011(f). *See* TEX. PENAL CODE ANN. §§ 22.011(f), 25.01.

### c. Legislative Interpretation

After reviewing the relevant bills related to section 22.011(f), it would be absurd to think the Legislature only wanted to raise the punishment level of sexual assault of a child offenses solely in bigamous situations. The purpose of Senate Bill 6 (SB 6), under which the modifications to the Texas Penal Code were made, was to protect children and elderly individuals. SENATE COMM. ON HEALTH AND HUMAN SERVICES, Bill Analysis, Tex. S.B. 6, 79th Leg., R.S. (2005). Included in that bill were changes to child protective and adult protective services and how to improve their effectiveness. *See id.* "SB 6 seeks to strengthen the state's ability to protect society's most vulnerable citizens: abused children, the elderly and the frail" according to the statement of intent in the bill analysis. *Id.* The language, which adds this penal code enhancement element in SB 6, was an amendment added late in the legislative session, which contained the language found in

22

House Bill 3006 (HB 3006). H.B 3006, 79th Leg., R.S. (2005). Although there was extensive committee analysis of SB 6, none of the analysis or hearing testimony involved reference to the amendment added from HB 3006.

HB 3006 was created with a focus on bigamy, but in the bill analysis, the author clearly distinguishes between the first provision on 22.011(f) and the second and third provisions of 22.011(f). *See* TEX. PENAL CODE ANN. §§ 22.011(f). Section 1.02 of the bill analysis states:

> Amends Section 22.011(e) and (f) of the Penal Code by providing that it is an affirmative defense to prosecution under Subsection (a)(2) that the actor was not more than three years older than the victim and at the time of the offense was not a person who under Chapter 62 of the Code of Criminal Procedure, had a reportable or adjudication for an offense and the victim was a child of 14 years of age or older; and was not a person whom the actor was prohibited from living under the appearance of being married under Section 25.01. *An offense under this section is a second degree felony except it is a first degree felony if the victim was a person whom the actor was prohibited from marrying.* (emphasis added).

HOUSE COMM. ON JUVENILE JUSTICE & FAMILY ISSUES, Bill Analysis, Tex. H.B. 3006, 79th Leg., R.S. (2005). Based on the bill analysis, it is clear that the author of HB 3006 did not intend "prohibited from marrying" to include a requirement that the element of bigamy be proven in order to enhance the offense to a first-degree felony. The analysis specifically does not include reference to "prohibited from marrying" nor § 25.01 as part of the same sentence.[9] *See* TEX. PENAL CODE ANN. §§ 22.011(f), 25.01. Although a good portion of HB 3006 was written to "regulate those activities associated with bigamy and polygamy," proving bigamy was not an absolute requirement to making sexual

---

[9] There is little other analysis or legislative history regarding this particular section of HB 3006 or its later addition to SB 6.

assault of a child a first degree felony when enhancing with the language "prohibited from marrying." Since the amendment was adopted into SB 6, whose main purpose was to "protect abused children," it would be absurd to believe that Legislators intended this provision to *only* protect sexual assault victims where the defendant was involved in a bigamous relationship, focusing on religious groups, instead of child victims that need protection.

A child molested by a family member is most likely whom the Legislature was seeking to protect by this law. If a victim of a sexual assault of a child case was fourteen years or older and molested by a close family member (based on consanguinity), prior to 2005, the highest level offense the State could seek to prosecute the defendant on was a second degree felony, which carries a maximum of twenty-years imprisonment. It is clear the Legislature wanted to protect those child victims. In the same SB 6, an enhancement element was also added to Section 25.02 of the penal code which made the offense of prohibited sexual conduct rise from a third degree felony to a second degree felony when the victim was an ancestor or descendant by blood or adoption of the person charged.[10]  *See* TEX. PENAL CODE ANN. § 25.02(c) (West, Westlaw through 2015 R.S.). There is no reference to bigamy in the prohibited sexual conduct section. *See id.* The enhancement element is due solely to the biological relationship between the victim and perpetrator. The difference between the offenses of sexual assault of a child and prohibited sexual conduct is the age and ability to consent of the complainant. *See* TEX. PENAL CODE ANN. §§ 22.011, 25.02. However, under the law, it does show that the

---

[10]  Section 25.02 also uses a definition to describe consanguinity without any reference to the Texas Family Code. *See* TEXAS PENAL CODE ANN. § 25.02.

legislature had a problem with sexual relationships between direct family members, with or without consent, and sought to enhance the penalties associated with those crimes.

### d.    Burden of Proof

Finally, if we would follow what Arteaga argues, then we would be holding the State to a higher burden of proof than found in the indictment.   Arteaga was charged with twenty-three almost identical counts in the indictment that stated:

> Robert Michael Arteaga, hereinafter referred to as the Defendant, on or about the 25th day of February, 2011, and before the presentment of this indictment, in the County of Burnet, and the State of Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of HSB Doe, a child who was then and there younger than 17 years of age, and a person whom the defendant was prohibited from marrying, by the defendant's sexual organ. . . .

It is important to clarify that section 22.011(f) is not a punishment enhancement, but an actual element required to be proven at the guilt-innocence phase for enhancement.   However, based on Special Issue #1, the jury did not convict Arteaga without finding every necessary element of the offense.   Based on the jury charge submitted, the State proved every element of sexual assault of a child *as well as* the enhancement element.   The dissent briefly addresses the special issue that was submitted to the jury along with the charge, but finds the jury must have been confused. The jury was not confused and affirmatively believed that Arteaga was prohibited from marrying Doe, his daughter.   It was not an oversight by the trial court.   That enhancement element was specifically submitted as a special issue to make sure the jury affirmatively believed it to be true.   Special issues are submitted in a variety of criminal cases along with the jury charge at the guilt-innocence phase to make sure enhancement elements were proven, such as sexual assault or aggravated assault cases.   *See* TEX.

25

PENAL CODE ANN. §§ 22.011, 22.021, 22.02. It was properly done here, and by doing so, the trial court had assurance the jury believed the State had proved each and every element required from the indictment. The State did not charge Arteaga with bigamy and should not have been required to prove the existence of a bigamous relationship, an element not contained in the indictment, in order to get the enhancement range of punishment.

The trial court submitted a proper jury charge. While the inclusion definition of a "void" marriage could have been error, it was slight and harmless. Evidence did not show that the inclusion of this definition cause Arteaga egregious harm. To hold otherwise cannot be what the legislature intended when enacting section 22.011(f) of the penal code and would lead to absurd results. *See* TEX. PENAL CODE ANN. § 22.011(f). We overrule issue one.

### III. CLOSING ARGUMENT

By his second point, Arteaga argues the trial court erred by "prevent[ing] appellant from arguing that the jury could consider his and others' perspectives on whether [nude photographs of Doe] constituted child pornography." Specifically, Arteaga maintains that the offense of possession of child pornography includes an implied element of scienter, and he should have been allowed to argue that "some people might not consider the photos obscene." We disagree with appellant's characterization of the trial court's ruling and conclude that its actions were not an abuse of discretion.

26

## A.  Pertinent Facts

During Arteaga's closing argument, the following exchange occurred:

| | |
|---|---|
| Trial Counsel: | And let me point out that, yes, to a stranger those photos are lewd, but nurses and doctors—and you are going to see these photos, and I've seen these photos, and as a father and as a lawyer in this case, I don't view them as lewd. I know that you have to make a decision whether or not when my client looked at them he was viewing them as lewd. |
| Prosecutor: | Judge, I would object. That's a misstatement of the requirements of the law, whether the defendant viewed them as lewd. |
| Trial Court: | That is a misstatement. It's just—the jury determines if they're lewd. |
| Prosecutor: | I would ask that the jury be instructed to disregard that last statement. |
| Trial Court: | You are instructed to disregard.  The instructions are what they are and they tell you that you determine if they're lewd photographs. |

## B.  Standard of Review

The trial court's ruling on the State's objection to a defendant's jury argument is reviewed for abuse of discretion.  *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010).  "Although the trial court has broad discretion in controlling the scope of closing argument, it may not prevent defense counsel from making a point essential to the defense."  *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.).  The defense has the legal right to argue any theory supported by the evidence.  *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997); *Lemos*, 130 S.W.3d at 892.  Prohibiting counsel from making a particular jury argument is a denial of the defendant's right to counsel when that argument is one the defendant is entitled to make.  *McGee v.*

*State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990); *Lemos*, 130 S.W.3d at 892. Only when the trial court restricts the defense counsel from doing something it had the legal right to do, however, is it considered a deprivation of counsel. *Jackson v. State*, 992 S.W.2d 469, 476 (Tex. Crim. App. 1999); *Lemos*, 130 S.W.3d at 892.

## C. Analysis

A person commits the offense of possession of child pornography if "(1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct, . . .; and (2) the person knows that the material depicts the child as described by Subdivision (1)." TEX. PENAL CODE ANN. § 43.26(a). The Penal Code defines "sexual conduct" as "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." *Id.* § 43.25(a)(2).

The jury was instructed under each count that it must find appellant did "intentionally or knowingly possess visual material that visually depicted, and which the [appellant] knew visually depicted a child . . . engaging in sexual conduct . . . which depicts lewd exhibition of the genitals or female breast below the top of the areola[.]" Therefore, the jury was required, under each count, to make a determination regarding the lewdness of the photographs. The term "lewd" has a common meaning that jurors can be fairly presumed to know and apply. *Tovar v. State*, 165 S.W.3d 785, 790 (Tex. App.—San

28

Antonio 2005, no pet.). Because the term "lewd" is not defined by statute, it need not be defined in the jury charge. *See id.*

Contrary to his assertion on appeal, Arteaga was not prohibited from arguing to the jury that others might not consider the photographs of Doe to be lewd. Arteaga's counsel argued, without objection, that "yes, to a stranger those photos are lewd, but nurses and doctors—and you are going to see these photos, and I've seen these photos, and as a father and as a lawyer in this case, I don't view them as lewd." The State objected specifically to Arteaga's counsel's argument that the jury "[had] to make a decision whether or not when my client looked at [the photographs] he was viewing them as lewd." The trial court's instruction was not improper.

Arteaga was allowed to argue and present evidence that others, including appellant, might not view the photographs as lewd. Specifically, Arteaga testified, without objection, that he did not consider the photographs to be child pornography. The argument the jury was instructed to disregard went a step further—informing the jury that the jury's consideration of lewdness was limited to whether appellant viewed the photographs as lewd. The trial court correctly instructed that it was within the jury's province to decide whether the photographs were lewd. *See id.* at 792 (holding an appeal from conviction for possession and promotion of child pornography that the defendant was not entitled to instruction that "whether the content of a photograph constitutes a lewd or lascivious exhibition of a child's genitals depends on the intent of the photographer"). We also note the jury charge tracked the language of the pertinent statutes and properly placed the burden on the State to prove appellant's mens rea as required by those statutes. *See id.*

29

The trial court's ruling and instruction were not an abuse of discretion.   Arteaga's second issue is overruled.

### III.   CONCLUSION

We affirm the trial court's judgments.


GINA M. BENAVIDES,
Justice

Dissenting Opinion by Justice Gregory T. Perkes.

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
22nd day of October, 2015.



# NUMBERS 13-13-00612-CR & 13-13-00613-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

**ROBERT MICHAEL ARTEAGA,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

### On appeal from the 424th District Court
### of Burnet County, Texas.

# DISSENTING OPINION

### Before Justices Benavides, Perkes and Longoria
### Dissenting Opinion by Justice Perkes

I respectfully dissent with the majority's holding on issue one. I would conclude that appellant was egregiously harmed by the erroneous jury charge.

## I. JURY CHARGE ERROR

### A. The Jury Charge

Appellant was convicted for multiple counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011 (West, Westlaw through 2015 R.S.). The offenses were charged as first-degree felonies under Texas Penal Code section 22.011(f). *See id.* The indictment alleged under each count that the victim was "a person whom the defendant was prohibited from marrying." Sexual assault of a child "is a felony of the second-degree, except that an offense under this section is a felony of the first-degree if the victim was a person whom the actor was prohibited from *marrying* or *purporting to marry* or with whom the actor was prohibited from *living under the appearance of being married* under Section 25.01." *Id.* at § 22.011(f) (emphasis supplied). Section 25.01 defines the offense of bigamy and employs similar language. An individual commits the offense of bigamy if:

>    (1) he is legally married and he:
>
>> (A) *purports to marry* or *does marry* a person other than his spouse in this state, or any other state or foreign country, under circumstances that would, but for the actor's prior marriage, constitute a marriage; or
>>
>> (B) lives with a person other than his spouse in this state *under the appearance of being married*; or
>
>    (2) he knows that a married person other than his spouse is married and he:
>
>> (A) *purports to marry* or *does marry* that person in this state, or any other state or foreign country, under circumstances that would, but for the person's prior marriage, constitute a marriage; or

(B) lives with that person in this state *under the appearance of being married.*

TEX. PENAL. CODE ANN. § 25.01 (West, Westlaw through 2015 R.S.) (emphasis supplied).

The charge of the court required the jury to find as an element of each count of sexual assault that the victim "was then and there a person whom [appellant] was prohibited from marrying," but did not otherwise define bigamous conduct. Instead, the charge included the following definition:

A marriage is void if one party to the marriage is related to the other as:

1) an ancestor or descendant, by blood or adoption;
2) a brother or sister, of the whole or half blood or by adoption;
3) a parent's brother or sister, of the whole or half blood or by adoption; or
4) a son or daughter of a brother or sister, of the whole or half blood or by adoption[.]

This language tracks the provisions of Texas Family Code section 6.201, titled "Consanguinity." *See* TEX. FAM. CODE ANN. § 6.201 (West, Westlaw through 2015 R.S.).

## B. Applicable Law

The trial court must charge the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense or offenses charged. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2015 R.S.). The "law applicable to the case" also includes the statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009). Therefore, a trial court must communicate to the jury each statutory definition that affects the meaning of an element of the offense. *Villarreal*, 286 S.W.3d at 329. "[A]bstract or definitional

3

paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996) *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). Reversible error occurs in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph. *Id.* (citing *Riley v. State*, 830 S.W.2d 584 (Tex. Crim. App. 1992); *Sandig v. State*, 580 S.W.2d 584, 586 (Tex. Crim. App.1979)).

**C. Analysis**

The jury charge failed to provide the proper statutory definition of "prohibited from marrying," as set out in Texas Penal Code section 25.01, which prohibits bigamy. This error was compounded by the trial court's inclusion of the definition "void marriage" from the Texas Family Code which voids certain marriages on the basis of consanguinity. I believe a proper error analysis requires this Court to construe Texas Penal Code section 22.011(f), including its explicit reference to section 25.01. To determine if error exists in this case, we must address an issue of statutory construction. *See Carmona v. State,* 76 S.W.3d 29, 31 (Tex. App.—Amarillo 2001, pet. ref'd). Because statutory construction is a question of law, we conduct a de novo review. *Druery v. State*, 412 S.W.3d 523, 533 (Tex. Crim. App. 2013).

"Where [statutory language] is clear and unambiguous, we will give effect to its plain meaning, unless that meaning would lead to absurd consequences that the legislature could not have intended." *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex.

4

Crim. App. 2014) (citations omitted). We are mindful that "every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963). "We examine statutes as a whole to contextually give meaning to every provision." *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013). We should also presume the Legislature intended a "result feasible of execution" when it enacted the statute. *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999).

The majority states that "25.01 does not have any reference to the language used in the indictment in this case 'prohibited from marrying.'" The majority then concludes that "since the language 'prohibited from marrying' used in section 22.011(f) was not used in section 25.01, proving bigamy under 25.01 would not be required in order for the State to charge under 'prohibited from marrying' in section 22.011(f)." This interpretation of the statute creates an unnecessary ambiguity as to the phrase "prohibited from marrying," which flows from a misreading of section 22.011(f) and its reference to the three "prohibitions" outlined in section 25.01.

Section 22.011(f) tracks the language of the bigamy statute and explicitly incorporates its provisions by reference. In reading the operative penal code sections together, it is clear that the language "under section 25.01" found in section 22.011(f) modifies each prohibition listed: "marrying," "purporting to marry," and "living under the appearance of being married." To read the statute otherwise would ignore the alignment of each provision's use of the terms "marry," "purport[ing] to marry," and "living under the

5

appearance of being married." The majority's construction of section 22.011(f) renders two of the three prohibitions without any clear definition. We are to avoid a construction of a statute that would render a provision meaningless, nugatory, or mere surplusage. *See Ludwig v. State*, 931 S.W.2d 239, 242 n. 9 (Tex. Crim. App. 1996); *Cook v. State*, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995).

Rather than define bigamous conduct, the jury charge erroneously included the definition of a "void marriage" from the Family Code. The "void marriage" instruction is not derived from a penal statute, is not expressly referenced by section 22.011(f), and does not employ similar terms in describing marriages that are "void." As noted by the majority, "if a jury-charge instruction 'is not derived from the [penal] code, it is not 'applicable law' under art. 36.14." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (citing *Walters v. State,* 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)). In other areas of the Penal Code, the legislature has expressly incorporated provisions of the Family Code to define a penal provision. *See, e.g.*, TEX. PENAL CODE ANN. § § 19.06(3), 21.01(4), 22.01, 22.07(f), 22.12(3), 25.03(c-2)(2), 25.11(d), 37.14, 38.07(f)(2), 38.111(e)(2), 42.07(b)(2), 46.04(d), 47.072(d)(1), 71.022(d)(2). In enacting section 22.011(f), the legislature chose not to do so, instead citing only the bigamy statute. Under the principle of statutory interpretation known as *inclusio unius est exclusio alterius*, we presume that the purposeful inclusion of certain terms in a statute implies the purposeful exclusion of terms that are absent. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *Bidelspach v. State*, 840 S.W.2d 516, 518 (Tex. App.—

6

Dallas 1992, pet. dism'd). Therefore, we presume that the legislature acted purposefully in including the phrase "under section 25.01" to define the prohibited conduct in section 22.011(f) without making any reference to marriages that are "void" under the consanguinity statute.

Section 22.011(f) clearly and unambiguously provides that sexual assault of a child is a first-degree felony only where the actor is prohibited under the bigamy statute from marrying the victim, purporting to marry the victim, or living with the victim under the appearance of being married.[1] *See Reynolds*, 423 S.W.3d at 382. Every court that has reviewed the statute has reached a similar conclusion.[2] *See State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013) (explaining that "the 'under Section 25.01' portion of the statute suggests that the provision applies when both sexual assault and bigamous conduct are alleged"); *State v. Rosseau*, 398 S.W.3d 769, 777 (Tex. App.— San Antonio 2011) *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013) (explaining that "[section

---

[1] I disagree with the majority's conclusion that the statute's legislative history supports a contrary interpretation. *See Wolfe v. State*, 120 S.W.3d 368, 370 (Tex. Crim. App. 2003) (explaining "because our primary goal is to carry out the legislative intent of the statute, we provide the legislative history . . . to highlight the harmony between the legislative intent and our holding today."). House Bill 3006 introduced additional language to section 22.011(f). Tex. H.B. 3006, 79th Leg., R.S. (2005). The bill analysis prepared by the House Committee on Juvenile Justice and Family Issues provides that the bill "focuses on various provisions of the Penal Code, Family Code, Election and Education Codes in order to better regulate those activities associated with *bigamy and polygamy*." House Comm. on Juv. Justice & Fam. Issues, Bill Analysis, Tex. H.B. 3006, 79th Leg., R.S. (2005) (emphasis supplied). The bill analysis also explains that "[t]he ambiguity of current Texas law has allowed for alleged crimes to be committed under the practice of religious freedom." *Id.* The Legislative Budget Board's Criminal Justice Impact Statement notes that "[t]he bill would amend the Penal Code by enhancing the punishment by one class for the offense of sexual assault when the offense of bigamy is involved." Crim. Justice Impact Statement, Tex. H.B. 3006, 79th Leg., R.S. (2005). House Bill 3006 was not voted on by the House of Representatives, but the portion of the bill amending section 22.011(f) was later included in Senate Bill 6 under the House version of the bill. Tex. S.B. 6, 79th Leg., R.S. (2005); Conference Comm. Report, S.B. 6, 79th Leg., R.S. (2005). Senate Bill 6 was enacted and became effective September 1, 2005. *Id.*

[2] Those courts include the Court of Criminal Appeals and the Austin Court of Appeals, from which this case was transferred. Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

22.011(f)] defines a first-degree felony sexual assault as occurring when a sexual assault has been committed under section 22.011 and when the victim was a person whom the defendant was prohibited from marrying, purporting to marry, or live with under the appearance of being married—which we refer to in this opinion as 'bigamous conduct'"); *State v. Hernandez*, 395 S.W.3d 258, 260–61 (Tex. App.—San Antonio 2012, no pet.) (concluding that bigamous conduct under section 25.01 is an element of first-degree felony sexual assault); *see also Holt v. State*, No. 03–08–00631–CR, 2010 WL 2218543, at *1 n. 1 (Tex. App.—Austin June 2, 2010, pet. ref'd) (mem. op., not designated for publication) (explaining that "[s]exual assault is a first-degree felony if the victim was a person whom the defendant was prohibited from marrying under penal code section 25.01 . . . [which] prohibits bigamy").

I do not believe that under these circumstances, the jury had a correct or complete understanding of the term "prohibited from marrying" as used in the application part of the charge. Therefore, the charge did not properly instruct the jury on the "law applicable to the case." I would conclude the charge is erroneous.

## II. EGREGIOUS HARM

I also disagree with the majority's holding that, in the event that the jury charge contained error, appellant did not suffer egregious harm.

### A. Applicable Law

Appellant did not object to the jury charge, therefore, any potential error in the charge is reviewed only for "egregious harm." *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008). "This is a difficult standard to meet and requires a showing that

8

the defendants were deprived of a fair and impartial trial." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). "[T]he error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id.* In determining whether egregious harm is shown, we look at the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* This analysis is fact specific and is done on a case-by-case basis. *Arrington v. State,* 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

## B. Analysis

### 1. The Entire Jury Charge

On this factor, the majority concludes that any error concerning inclusion of the definition of "void marriage" would be minimal. The majority notes that the definition constituted an abstract charge, and was not included in the application paragraph of the jury instruction. However, as noted above, reversible error does occur "in the giving of an abstract instruction when the instruction is an incorrect or misleading statement of a law which the jury must understand in order to implement the commands of the application paragraph." *Plata*, 926 S.W.2d at 302. The "void marriage" definition was not merely a superfluous abstraction, as the majority concludes. Rather, the definition was necessary to the jury's understanding of the phrase "prohibited from marrying" as used in the application paragraphs of the charge. A proper definition of "prohibited from marrying" can only be derived from section 25.01.

9

The majority also states that "[i]t could be considered common knowledge that a parent cannot marry their child." While this may be true, it simply underscores the resulting harm. While any marriage between a father and daughter would result in a "void" marriage, it would not serve as evidence of bigamous conduct necessary to prove an essential element of first degree sexual assault of a child. I would conclude that this factor weighs in favor of finding egregious harm.

### 2.   The State of the Evidence

"[U]nder this prong of an egregious harm review, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *Id.* at 841. The evidence at trial focused almost exclusively on whether appellant sexually assaulted HSB Doe. There was no evidence presented concerning whether HSB Doe was someone who appellant was "prohibited from marrying" under section 25.01, an essential element of the offense which the State had the burden to prove. Rather, the record reflects that neither appellant nor HSB Doe were legally married to another person at the time the charged offenses were committed. This factor also weighs in favor of finding egregious harm.

### 3.   The Parties' Argument

Under this factor, "we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Id.* at 844. As the majority notes, the State explicitly relied on the definition of void marriage in its closing argument regarding whether appellant was "prohibited from marrying" the victim:

10

We, of course, know that she's not the defendant's spouse and we also know that you can't marry your daughter. We don't even need to -- we all know that. You can't marry your daughter and the Court sets it out here that a marriage is void if it's to an ancestor or descendent by blood or adoption and then there's another categories. You can't marry your sister. You can't marry your brother, et cetera.

. . .

And then as the judge pointed out on the last paragraph, the special issue, do you find whether the defendant was prohibited from marrying HSB Doe, which we know is HSB Doe, and clearly the answer to that is we do, and so you would just write we do and your presiding juror can be -- can sign that form.

The State's closing argument focused the jury's attention on the erroneous "void marriage" instruction. This factor also weighs in favor of finding egregious harm.

### 4. Other relevant information in the record

The majority notes that "[n]othing was ever raised by [a]ppellant about bigamy, void marriage, or even anyone wanting to get married." However, it was the State's burden to prove bigamous conduct as element of first-degree felony sexual assault. The State presented no evidence in this regard. I do not believe that appellant's failure to raise the issue weighs against a finding of egregious harm.

The majority also notes that "the trial court included Special Issue #1 in the jury charge to be certain the jury found the enhancement element to be true[,]" and "[t]he jury did not send out any jury notes relating to the definition of 'void' marriage[.]" I believe this simply reflects the jury's reliance on the erroneous instruction in answering Special Issue #1, and is a further indication of egregious harm.

11

### 5. Consideration of the Four Factors

A factual allegation of bigamous conduct is an element of first-degree felony sexual assault under section 22.011(f), not merely a punishment enhancement. *Hernandez*, 395 S.W.3d at 260–61. As an element of the offense, bigamous conduct must be proven beyond a reasonable doubt during the guilt/innocence phase of trial. *Id.* The inclusion of the "void marriage" definition permitted the jury to convict appellant of a first-degree felony without finding a necessary element of the offense—that the victim was a person appellant was prohibited from marrying under the bigamy statute. The prosecution specifically relied on the "void marriage" instruction in its closing argument.

As a result, appellant was deprived of a valuable right—the right to have a jury determination of every element of the alleged offense. *See Riley v. State*, 447 S.W.3d 918, 931 (Tex. App.—Texarkana 2014, no pet.) (holding that appellant was deprived of a fair trial where the jury was instructed in such a way that it was not required to find at least two elements of the offense of capital murder to be proven beyond a reasonable doubt); *In re K.A.*, 420 S.W.3d 172, 177 (Tex. App.—Amarillo 2012, no pet.) (concluding that jury charge fundamentally defective because it authorized the jury to find K.A. guilty of the offense without finding all of the elements of the offense beyond a reasonable doubt); *Lindsay v. State*, 102 S.W.3d 223, 231 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding Lindsay was harmed by the trial court's failure to include a definition for "criminal responsibility" in the jury charge).

I would hold that the error in the jury charge was sufficiently egregious as to deprive the appellant of a fair trial.

### III. REFORMATION OF THE JUDGMENT

While I would conclude that the jury charge error resulted in egregious harm, I believe the proper disposition is to reform the judgment to reflect a conviction for the second-degree felony of sexual assault of a child.

### A. Applicable Law

Where the State fails to prove an aggravating element of an offense—here the bigamy element—but proves the essential elements of the offense, "the appellant would enjoy an 'unjust' windfall from an outright acquittal." *Thornton v. State*, 425 S.W.3d 289, 298 (Tex. Crim. App. 2014). An outright acquittal under such circumstances would be unjust because the result would involve usurping the fact finder's determination of guilt. *Id.* A court of appeals should limit the use of judgment reformation to those circumstances when the commission of a lesser offense can be established from the facts that the jury actually found. *Id.*

In determining whether to reform a judgment to reflect a conviction for a lesser-included offense, we must answer the following questions: (1) in the course of convicting appellant of sexual assault of a child, a first-degree felony, must the jury have necessarily found every element necessary to convict appellant for sexual assault of a child, a second-degree felony; and (2) conducting an evidentiary sufficiency analysis as though the appellant was convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense. *Id.* at 299–300. If the answer to both questions is yes, the court is required to avoid the "unjust" result of an outright acquittal

13

by reforming the judgment to reflect a conviction for the lesser-included offense. *Id.* at 300.

## B.  Analysis

A second-degree felony offense for sexual assault of a child contains the same elements as a first-degree offense, minus the element referencing bigamous conduct under section 25.01.  TEX. PENAL CODE ANN. § 22.011(a), (f).  On each count, the jury, in the course of finding appellant guilty of sexual assault of a child, a first-degree felony, must have necessarily found every element necessary to convict appellant of a second-degree felony.  *See Thornton*, 425 S.W.3d at 302.  Furthermore, viewing the evidence in the light most favorable to the verdict, I am satisfied that a rational trier of fact could have found the essential elements of each count of sexual assault of a child, a second-degree felony, beyond a reasonable doubt.  *See Johnson*, 364 S.W.3d at 293–94.

## IV.  CONCLUSION

I would sustain appellant's issue alleging jury charge error, and remand this case to the trial court to reform the judgment to reflect a conviction for the offense of sexual assault of a child, a second-degree felony, and to conduct a new punishment hearing. *See Thornton*, 425 S.W.3d at 307.   For the foregoing reasons, I respectfully dissent.

GREGORY T. PERKES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of October, 2015.

14